SECURITIES AND EXCHANGE COMMISSION, Plaintiff-Appellee,

William T. Dolan, Receiver, Appellee,

v.

Neil T. NAFTALIN, Defendant-Appellant.

No. 20424.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 14, 1972.

Decided April 17, 1972.

Joe A. Walters, O'Connor, Green, Thomas, Walters & Kelly, Frank J. Walz, Minneapolis, Minn., for defendant-appellant.

Gary C. Hoffman, Hyass, Weisman & King, Chartered, Robert J. King, Minneapolis, Minn., for plaintiff-appellee.

Before JOHNSEN, GIBSON and LAY, Circuit Judges.

JOHNSEN, Senior Circuit Judge.

A statutory suit under 15 U.S.C. §§ 78u(e) and 77t(b) was instituted by the Securities and Exchange Commission against Naftalin & Co., Inc., a registered broker and dealer in securities, and against Neil T. Naftalin individually, the corporation's president, majority stockholder and person controlling the business, to enjoin certain violative acts and practices which had been engaged in, and for the appointment of a receiver, on the ground of insolvency, to take charge of and hold all assets and property belonging to or in possession of the corporation, subject to the further order of the court. On a hearing, a receiver was so appointed. The appeal before us is one taken by Neil T. Naftalin, individually, from some orders entered against him in the receivership.

The situation which had prompted the Commission's suit arose primarily out of the actions of Neil T. Naftalin in having placed orders on behalf of the corporation with some 23 brokerage firms for the sale of various listed stocks totaling over $10,000,000 in amount, which were being sold "short", in that the corporation neither owned nor otherwise was in a position to make delivery of the stocks. The brokerage firms accepted the "sell" orders under confirmations which called for delivery of the stocks to be made to them within seven days. They proceeded to carry out the sale orders and, pending receipt of the certificates from the seller, "lent" stock for completing the transactions with the purchasers.

Neil T. Naftalin then stalled off the brokerage firms on the delivery of the stocks for approximately two months, with varying excuses, until it finally became necessary for him to call a meeting of the brokerage firms in New York and reveal to them that the corporation had not owned the stocks and had not at any time been able to make a delivery. The brokerage firms immediately "bought in" stocks to cover the situation and to enable them to wind up the transactions. What had happened was that after the "sell" orders had been placed, the stock market, instead of continuing its then downward-trend, as Naftalin had expected, began to rise. The result was that the brokerage firms finally wound up with aggregate losses from the transactions of some $1,200,000. Within a few days thereafter the Securities and Exchange Commission instituted its protective suit.

Ten days prior to the meeting with the brokerage firms in New York, Neil T. Naftalin engaged in placing an order with another brokerage firm for the purchase on behalf of the corporation of United States Treasury bonds in the face amount of $670,000. Payment for

the bonds was to be made from funds on deposit with the brokerage firm in the corporation's margin account. The bonds were to be sent to the First National Bank of Minneapolis for delivery to the corporation. Neil T. Naftalin took delivery of the bonds from the bank and then made transfer and delivery of them to himself, for application, he claimed, upon some loans which he had made to the corporation. After he thus had gotten the bonds, he joined with the corporation in filing an answer in the Commission's suit acknowledging that "the corporation is presently insolvent and is unable to meet its liabilities as they accrue and mature".

On a hearing held shortly after the court's appointment of a receiver, Naftalin testified, under interrogation by counsel for the Commission, that following the transfer of the bonds to himself he made delivery of all of them to six other persons, whose names he refused to state, "in satisfaction of my obligations to them". Later, he requested an opportunity to appear before the court to "clarify" this testimony. On such opportunity being accorded him, he testified that he had not in fact given the bonds to six other persons as he had previously sworn; that he had turned over bonds to only two persons—one a woman in Minneapolis to whom he had given an amount of $30,000, and the other his former New York counsel, to whom he had sent a number of the bonds but who had subsequently returned them to him; that he had thereafter sold a portion of the bonds in the face amount of $50,000, making a total of $80,000 which he no longer held; and that there thus remained in his possession only $590,000 of the $670,000 original amount. The court thereupon orally directed him "to retain in your possession the bonds that you presently have".

A few days later, involuntary petitions in bankruptcy were filed against the corporation by six of the 23 brokerage firms. Before any adjudication had occurred thereon, the Commission-suit receiver filed an application for an order requiring Neil T. Naftalin to deposit the remaining $590,000 bonds with the court. As basis for filing the application, he made showing that after the court's oral direction to Naftalin to retain possession of the bonds, Naftalin had gone to New York and placed an order with another brokerage firm to purchase $1,500,000 in stocks for him; that he had agreed to deposit the $590,000 bonds with the brokerage firm as collateral for payment of the stocks; and that such deposit was to be made within a period of three days.

The court set the application for immediate hearing. Naftalin made legal appearance through his attorney in resistance to the application. The application was granted and an order was entered requiring Naftalin to make deposit of the bonds with the Clerk of the Court by a fixed time. Copy of the order was immediately served upon Naftalin's attorney—Naftalin having chosen, as indicated, not to be present in the courtroom and to make legal appearance at the hearing through his attorney.

Naftalin failed to comply with the deposit order and the receiver then made application to have him held in civil contempt. At the hearing set thereon, Naftalin again chose not to be personally present, but as before, to make legal appearance through his attorney, seeking to have the receiver's application denied or alternatively to have the matter continued over until a challenge which had been made by the corporation in the bankruptcy proceeding to the charge of insolvency and to the capacity of the brokerage firms to constitute creditors had been disposed of in the bankruptcy court. The answer, however, which had been filed in the Commission's suit acknowledging the corporation's insolvency still stood without any attempted repudiation on the court records.

The court held Neil T. Naftalin to be in contempt for failing to comply with the previous bond-deposit order; granted him a short further time in which to make deposit of the bonds; and provided that "in default thereof, the Unit-

ed States Marshal in any District of the United States is hereby ordered and directed to arrest the said Neil T. Naftalin and produce him forthwith before the Court for further Order of this Court", with a certified copy of the order being made to constitute "sufficient warrant to the United States Marshal for such arrest and production before this Court".

■ Service of the contempt order was immediately made on Naftalin's attorney. Such service, in legal notice to Naftalin, was entitled to be made upon his attorney under Rule 5(b), Fed.R. Civ.P., both in respect to the application and to the civil contempt order. See Watkins v. Rives, 75 U.S.App.D.C. 109, 125 F.2d 33, 40 (1941), N.L.R.B. v. Hopwood Retinning Co., 104 F.2d 302, 305 (2 Cir. 1939), Wright & Miller, Federal Practice and Procedure: Civil § 1145. There is no claim that the attorney did not advise Naftalin of the existence and contents of the contempt order so as on that ground to have given rise to a possible question of due process from lack of actual knowledge and notice.

In fact, to the contrary, Naftalin thereafter filed a motion to have that part of the order providing for his arrest by a United States Marshal in any District of the United States vacated as being invalid in authorizing service of civil process beyond the territorial limits permitted by Rule 4(f), Fed.R.Civ.P., and as being violative of the prohibition of 28 U.S.C. § 1693 that "except as otherwise provided by Act of Congress, no person shall be arrested in one district for trial in another in any civil action in a district court". The court denied the motion.

The order requiring deposit of the $590,000 bonds was entered on March 27, 1970, and gave Neil T. Naftalin until March 30 to make the deposit. From a certified copy, which has been lodged with us, of an order entered by the Referee in Bankruptcy, it appears that on a hearing in the bankruptcy proceedings, subsequent to the taking of the appeal

before us, the Referee has made findings (not shown to have been the subject of a petition for review) that on March 28 or 29, 1970, immediately after the March 27 deposit order, Naftalin took off for Switzerland with the bonds and turned them over to the Cambio Valorenbank of Zurich, which subsequently sent them to the Chase Manhattan Bank of New York. There is nothing to indicate what the nature of these transactions or the relationships involved in them had been.

In any event, when the receiver learned that the bonds had come into the possession of the Chase Manhattan Bank, he sought and obtained an order in the Commission's suit directing the Bank to make deposit of the bonds with the Clerk of the Court, and authorizing the receiver to make application to the District Court for the Southern District of New York, if necessary, for an auxiliary order against the Bank. The Bank, apparently without requiring any such auxiliary order, transmitted the bonds to the Clerk for deposit in the Minnesota District Court where they are being held under order providing for deferment of all questions of ownership, title and right to ultimate possession until a final determination of the bankruptcy issue has occurred in the bankruptcy suit. The receivership proceedings and the bankruptcy proceedings are both pending in the same district court, but on the dockets of different judges, Judge Larson and Judge Neville, respectively.

It was at this stage that Neil T. Naftalin filed a notice of appeal seeking reversal of the order requiring him to make deposit of the $590,000 bonds; of the order adjudging him to be in contempt for not complying with the deposit order; of the order authorizing his arrest in any district of the United States and the issuance of process to any district for effecting it; and of the court's denial of the motion to vacate the contempt and arrest orders. The questions will be here dealt with in inverse order.

## I.

■ The contentions of invalidity of the order for Naftalin's arrest in any district of the United States and for the issuance of process on that basis, and of error in making denial of the motion to vacate the order, do not require any consideration here, for they have now become moot. Since the deposit of the bonds by the Chase Manhattan Bank, and after the filing of the notice of appeal, the receivership court has vacated and set aside the part of its previous order "which relates to the arrest of the defendant". We accord recognition and effect to the vacating order. No cognizance is therefore necessary as to this part of the appeal, other than to engage in a dismissal thereof on the ground that the questions lack any adjudicatory consequence in the case and so are moot.

## II.

■ As to the appeal from the determination of contempt, we dismiss this part of the appeal also, as being an attempt to appeal from an order which in the circumstances does not constitute a "final decision" under 28 U.S.C. § 1291.

In the first place, the order merely makes an adjudication that a contempt has been committed. No sentence or sanction is imposed by it for the contempt. Until a sentence or sanction has been made to exist as to a contempt adjudication, the situation is lacking in the elements of operativeness and consequence necessary to be possessed by any judicial order to enable it to have the status of a final decision under § 1291.

■ But even if the order here had imposed a sentence or sanction, it would still have constituted a nonappealable interlocutory order, in that the situation was one where Naftalin was a party and not a stranger to the suit. The rule applicable in these circumstances has been stated thus by Professor Moore . in 9 Moore's Federal Practice, § 110.13[4]:

"A sentence for civil contempt for disobedience during the course of a pending action is appealable immediately only if the contemnor is not a party to the pending action. * * * But one who is a party to the pending action cannot immediately appeal from a sentence of civil contempt for disobedience during the course of the action. As to him the sentence is a nonappealable interlocutory order."

Among the cases in which statement of the rule has also been made are Fox v. Capital Co., 299 U.S. 105, 57 S.Ct. 57, 81 L.Ed. 67 (1936); Dickinson v. Rinke, 132 F.2d 884, 885 (2 Cir. 1943), Hyde Construction Co. v. Koehring, 348 F.2d 643, 647 (10 Cir. 1965), reversed on other grounds, 382 U.S. 362, 86 S.Ct. 522, 15 L.Ed.2d 416; Southern Ry. Co. v. Lanham, 403 F.2d 119, 124 (5 Cir. 1969); Fireman's Fund Ins. Co. v. Myers, 439 F.2d 834, 838 (3 Cir. 1971).

The part of the appeal taken from the order holding Naftalin to be in contempt is accordingly dismissed for lack of jurisdiction.

## III.

■ As to the appeal from the order requiring Naftalin to make deposit of the bonds, we similarly hold that this also constituted in the situation a nonappealable interlocutory order under § 1291.

Here, too, because of Naftalin's status as a party, the situation was not subject to the general rule that possession of property cannot legally be obtained in a receivership by summary process against a stranger to the record claiming title and right to possession. "Where property, in the possession of a third person, is claimed by the receiver, the complainant must make such person a party by amending the bill, or the receiver must proceed against him by suit in the ordinary way." Davis v. Gray, 16 Wall. (83 U.S.) 203, 218, 21 L.Ed. 447 (1872).

Besides being a party to the suit, Naftalin was here also an officer and fiduciary in respect to his dealings with the corporation's property—the more so as to any actions engaged in by him for his own benefit, and particularly where

these did not constitute open, arms-length transactions. Moreover, Naftalin's machinations to keep both himself and the bonds out of the hands of the court, and his manifest intention to utilize the property to pursue his apparent stock-market gambling proclivities presented such a potentiality of probable irreparable injury as to be capable of thwarting the purpose of the Commission's public-protection suit. This realistic hazard would be able to be avoided only by having the bonds immediately placed in the court's hands. As the Supreme Court observed in *Davis,* supra, at p. 232, as to the affording of protection from irreparable injury in a receivership case "It is the peculiar function of a court of equity in a case like this to avert such results".

In the jurisdictional hold which the court had from Naftalin's status as a party; on the apparent substantiality which could properly be regarded as existing in relation to the receiver's claim of interest; and with the substantial threat of dissipation which inhered in the situation—we think it clear that the court had jurisdiction of the subject matter and of the person; that it had power to make the deposit order; and that no basis exists for any contention of unconstitutional deprivation of property as a due-process violation.

All that the order did was merely to lodge possession in the court. Naftalin's claims of rights were in no other way affected. The court's order for deposit of the bonds was clearly within the traditional protective powers of a chancery court in a receivership proceeding as against a party to the suit.

In Tinsley v. Anderson, 171 U.S. 101, 18 S.Ct. 805, 43 L.Ed. 91 (1898), where the president of the corporation, like Naftalin here, was individually made a party in the receivership proceedings, the court ordered him, even without any question of irreparable injury being contended to be involved, to put into the court's hands a minute book and some promissory notes which he claimed had been delivered by the corporation to him as collateral security for money advanced by him to the corporation, and on which he thus had a security and possessory lien. The Supreme Court said (p. 107): "We concur in the view that it was undoubtedly competent for the district court to compel the surrender of the minute book and notes in Tinsley's possession * * * *".

We hold, as previously indicated, that the order for deposit of the bonds with the court in protective possession was in the situation a nonappealable interlocutory order, and we dismiss this part of the appeal also for lack of jurisdiction.

## IV.

Further complications will probably arise in the situation from the plays of both the corporation and Naftalin. We have mentioned that in the receivership proceedings acknowledgment was made of the corporation's insolvency, but that in the bankruptcy proceedings contest was being made of the question of insolvency and of the right of the six brokerage firms to constitute petitioning creditors. We are not advised as to the present status of the bankruptcy case, but whatever may be the ultimate determinations and results therein, the existing protective possession of the receivership court cannot be challenged by this attempted appeal.

## V.

Appeal dismissed—one part thereof, as indicated, for mootness, and the other parts, as indicated, for lack of jurisdiction.