Rex L. SHUFFLER and Betty L. Shuffler, Plaintiffs-Appellants,

v.

HERITAGE BANK, a California corporation, Defendant-Appellee.

No. 82–5584.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 6, 1983.

Decided Nov. 25, 1983.

William R. Thomas, II, San Diego, Cal., for plaintiffs-appellants.

Michael G. Dawe, Irvine, Cal., for defendant-appellee.

Before GOODWIN, TANG and FLETCHER, Circuit Judges.

FLETCHER, Circuit Judge:

Appellants challenge an order of the district court finding them in civil contempt of a prior order of the court and imposing a fine of $500 per day for the duration of their contumacy. We sustain the finding of contempt but vacate the sanction order and remand for entry of a statement of the purpose or purposes of the contempt sanction and findings to support the fine and such recalculation as may be required to determine the amount of the fine consonant with the purpose or purposes of the sanction.

## I

## FACTS

On November 10, 1980, Rex L. Shuffler and Betty L. Shuffler (the Shufflers) brought suit in federal district court to restrain a foreclosure sale by Heritage Bank of two properties owned by the Shufflers. They alleged violations by Heritage of certain provisions of the federal Truth in Lending Act. After a year of litigation, on October 21, 1981, the Shufflers stipulated to the entry of a judgment against them (1) ordering them to pay into escrow for Heritage $190,000 on or before February 15, 1982, and (2) granting Heritage "the right to have sold by Trustee's Sale" on February 17 and 18, 1982, the two properties owned by the Shufflers if they had not made the $190,000 payment by February 15, 1982. The judgment by its literal terms did not impose any other restrictions on the actions of or compel any further acts by the Shufflers. While the judgment was lodged with the court on October 22, 1981, it was not to be entered and filed, according to its terms, until the district court had received notice that the Shufflers had not made the $190,-000 payment by February 15, 1982. Pursuant to the stipulation, the Shufflers "irrevocably waived" any "right of appeal, or any other form of challenge" to the judgment.

The Shufflers did not pay the $190,000 into escrow on or before February 15, 1982. On February 16, 1982, after the district court had received notice of the Shufflers' nonpayment, the Shufflers filed a motion seeking a temporary restraining order (TRO) further postponing the foreclosure sale. The same day, the district court denied the TRO and then entered the judgment as stipulated. On March 18, 1982, the Shufflers took an appeal from the denial of the TRO, which appeal was later abandoned.

On February 16, 1982, upon denial of the TRO, the Shufflers conveyed their two

properties to Coastal Community Enterprises (Coastal), a California partnership, which then immediately filed a petition in bankruptcy. Pursuant to section 362(a) of the Bankruptcy Reform Act of 1978, Coastal's filing in bankruptcy invoked an automatic stay of any foreclosure against the property of Coastal, including the two properties. *See* 11 U.S.C. § 362(a) (Supp. V 1981).

On April 6, 1982, Heritage filed a motion under Federal Rule of Civil Procedure 70 seeking contempt sanctions against the Shufflers to compel the Shufflers to perform acts necessary to effectuate the February judgment and to compensate the bank for losses sustained. Specifically, Heritage sought an order requiring the Shufflers (1) to reimburse Heritage for all costs, attorney's fees, and damages arising from the alleged contumacy, including lost profits on the $190,000 which Heritage would have earned if the judgment had been timely complied with; and (2) to pay Heritage a fine of $1,000 a day until the Shufflers complied with the judgment by either placing $190,000 into escrow or securing reconveyance of title to the properties to them so that the properties might go to foreclosure sale "as originally contemplated in the judgment."

The district court held a hearing on Heritage's motion on April 26, 1982, and apparently ruled from the bench that the Shufflers were in contempt and would be fined. On May 27, 1982, the court entered an order finding the Shufflers "in contempt of this court, having willfully violated the terms of the judgment entered in this matter February 16, 1982." The court further ordered the Shufflers to pay to Heritage "contempt sanctions" in the amount of $500 per day beginning on April 26, 1982, and ending upon Shufflers' compliance with the February judgment. The court stated that either the Shufflers' deposit of $190,000 plus 7 percent interest from February 16, 1982, or "the sale of the residences pursuant to, and in accordance with, the terms of" the February judgment would constitute compliance with the February judgment. The Shufflers filed a notice of appeal on June 25, 1982, seeking review of the May contempt order.

On April 28, 1982, two days after the hearing on the Rule 70 motion, the bankruptcy court granted Heritage's petition for relief from the automatic stay and Heritage regained the ability to foreclose on the properties. The Shufflers nonetheless managed to convince Heritage to delay the sale of their homes for several weeks.

The parties finally entered a settlement agreement on June 11, 1982, regarding the Shufflers' obligations to Heritage. Heritage, for its part, agreed to postpone indefinitely the trustee's sale of the two Shuffler properties, to execute certain documents of satisfaction and release upon payment by the Shufflers, and to forbear any and all efforts to execute upon the sanctions accruing under the May contempt order. In return, the Shufflers agreed, *inter alia,* to deposit $208,483.26 plus interest into an escrow account for the benefit of Heritage, to pay an increased rate of interest if the escrow payment were not timely made, to extend and modify the terms of a promissory note previously issued to Heritage by Shufflers to cover "the total amount of sanctions having accrued against the Shufflers for the benefit of Heritage" plus interest, and to secure the modified note by modifying Heritage's deed of trust on Shufflers' properties.

Pursuant to this agreement, an escrow account was established, and escrow closed on July 9, 1982. Heritage received $182,999.64 in cash and a promissory note from the Shufflers for $30,000. The following September, Heritage had recorded an acknowledgement of full satisfaction of the February judgment.

On August 10, 1982, Heritage filed a motion for a writ of execution on the contempt sanction, seeking a determination of the date upon which the $500 per day sanctions had ceased to run. On September 3, 1982, the Shufflers filed a counter-motion for reconsideration of the order of contempt. On September 13, 1982, the district court issued an order denying the Shufflers' counter-motion and holding Shufflers liable in con-

tempt from April 26, 1982, through July 9, 1982, a period of 74 days, for a total of $37,000.

## II

## JURISDICTION

Heritage contends that we have no jurisdiction over the appeal from the order of contempt of May 27, 1982, for several reasons: (a) lack of finality; (b) mootness; (c) waiver; and (d) settlement agreement. We do not find these arguments persuasive.

### A. *Lack of Finality.*

Heritage argues first that the May order is not a "final decision" of the district court as required by 28 U.S.C. § 1291 (1976), because it did not quantify the contempt sanction and left open the manner by which the order was to be enforced. Heritage points to the subsequent order of the district court quantifying the duration of contempt at 74 days and issuing a writ of execution against Shufflers in the amount of $37,000 as proof of the lack of finality of the May order. We cannot agree.

■ Where the contempt proceeding is the sole proceeding before the district court, an order of civil contempt finding a party in contempt of a prior final judgment and imposing sanctions is a final decision under section 1291. *See Alexander v. United States,* 201 U.S. 117, 121–22, 26 S.Ct. 356, 357–58, 50 L.Ed. 686 (1906); *Cabrera v. Municipality of Bayamon,* 622 F.2d 4, 7 (1st Cir.1980); *Vincent v. Local 294, International Brotherhood of Teamsters,* 424 F.2d 124, 128 (2d Cir.1970); 9 J. Moore, B. Ward & J. Lucas, *Moore's Federal Practice* ¶ 110.-13[4], at 168 (2d ed. 1982). Even though the size of the sanction imposed by the order depends upon the duration of contumacious behavior occurring after entry of the con-

tempt order, the order is nonetheless final for purposes of section 1291. *See Cabrera,* 622 F.2d at 7 ($1,000 per day fine); *Vincent,* 424 F.2d at 127 ($200 per day fine). Once the finding of contempt has been made and a sanction imposed, the order has acquired all the "elements of operativeness and consequence necessary to be possessed by any judicial order to enable it to have the status of a final decision under § 1291." *See SEC v. Naftalin,* 460 F.2d 471, 475 (8th Cir.1972). Thus, we have jurisdiction over this appeal under 28 U.S.C. § 1291.[1]

### B. *Mootness.*

■ Heritage next argues that the appeal is moot because the closing of escrow on July 9, 1982, satisfied the terms of the February judgment upon which the order of contempt was based and thereby purged the contempt. We reject the argument. While the contempt itself has been purged, whether the Shufflers are liable for the $500 daily fine imposed under the May contempt order remains a live controversy. Indeed, it is only from that order and not the earlier judgment that this appeal is taken.

*Marshall v. Whittaker Corp.,* 610 F.2d 1141 (3d Cir.1979), which states that an appeal taken from a contempt order is moot once the contempt has been purged, is inapposite. In *Marshall,* the district court ordered the contemnor to permit inspection, but did not impose any monetary penalty. 610 F.2d at 1143–44. In the circumstances of that case, once inspection had taken place, nothing remained to be decided on appeal of the contempt order.[2] *See also In re Kulp Foundry, Inc.,* 691 F.2d 1125, 1129–30 (3d Cir.1982).

### C. *Waiver.*

■ Heritage argues that the appeal should be dismissed because the October 18,

---

1. The district court's orders quantifying the sanction at $37,000 and issuing a writ of execution on it are void. The district court itself lacked jurisdiction to consider Heritage's motion for quantification and execution "because the timely filing of the notice of appeal from the original order imposing sanctions transferred the action to this court." *Miranda v.*

*Southern Pacific Transportation Co.,* 710 F.2d 516, 519 (9th Cir.1983).

2. It should be noted that holding this case moot would actually hurt, not help, Heritage's position, because in that situation we would vacate the district court order finding the Shufflers in contempt. *See Marshall,* 610 F.2d at 1145.

1981, stipulation entered into by the parties included a waiver by the Shufflers of any right of appeal or challenge to the judgment to be entered by the court on February 16, 1982. While the October stipulation did entail a waiver of appeal from the February judgment, it did not sweep so broadly as to foreclose this appeal. The Shufflers here seek review of only the May order of contempt, not the February judgment upon which the contempt order was based.

### D. Settlement Agreement.

■ Heritage finally asserts that the appeal should be dismissed as moot on the ground that the Shufflers and Heritage entered a purported settlement agreement that included a bargained for promise by the Shufflers to waive appeal from the order of contempt. See *Ringsby Truck Lines, Inc. v. Western Conference of Teamsters,* 686 F.2d 720, 721 (9th Cir.1982). Heritage points out that on June 11, 1982, subsequent to the entry of the order of contempt on May 27, 1982, but before the appellants filed their notice of appeal from that order, Shufflers and Heritage entered an agreement regarding the Shufflers' obligations to Heritage. Heritage urges that implicit in the agreement was a waiver by the Shufflers of any right of appeal from the May order of contempt. We cannot agree.

Despite a detailed and precise explanation of the Shufflers' other obligations under the June agreement, the document nowhere mentions, directly or indirectly, any waiver by the Shufflers of their right to challenge the finding that they were in contempt and the size and duration of the contempt sanction imposed by the district court's order. Nor does any other evidence in the record show an intent by the parties that, as part of the June agreement, the Shufflers were waiving appeal from the order of contempt. Moreover, Heritage in its brief to us never contended that the June agreement barred an appeal, but rather first put forward the contention at oral

argument. Under these circumstances, we read the agreement *not* to bar an appeal of the contempt order itself, but rather simply to guarantee that any contempt sanction sustained on appeal would be covered by the promissory note and secured by the deed of trust. Thus, we conclude that the June agreement does not constitute a waiver of the Shufflers' right to appeal the May order of contempt.

### III

### CONTEMPT SANCTION

On the merits, the Shufflers challenge the order of contempt on two grounds: (a) that the finding of contempt was in error; and (b) that, even if the Shufflers were in contempt, the size and duration of the contempt sanction as ordered were improper. While the district court correctly found that the conduct of the Shufflers was contumacious, we reluctantly conclude that the sanction imposed by the court's order cannot be sustained on the present record.

### A. Finding of Contempt.

Shufflers contend first that they were never in contempt because nothing they did or failed to do violated the terms of the judgment of February 16, 1982, the order of the court upon which the contempt order is based. This argument is meritless.

■ A court has power to adjudge in civil contempt any person who willfully disobeys a specific and definite order requiring him to do or to refrain from doing an act.[3] See *In re Baum,* 606 F.2d 592, 593 (5th Cir.1979); *Taylor v. Finch,* 423 F.2d 1277, 1279 (8th Cir.), *cert. denied,* 400 U.S. 881, 91 S.Ct. 125, 27 L.Ed.2d 119 (1970); *Lichtenstein v. Lichtenstein,* 425 F.2d 1111, 1113 (3d Cir.1970). A person fails to act as ordered by the court when he fails to take "all the reasonable steps within [his] power to insure compliance with the [court's]

---

**3.** Both parties concede that since the contempt sanction here (a) was to be paid to Heritage and not to the court, and (b) was based on future conduct and not past behavior, the con-

tempt was civil, *not* criminal, in nature. *See, e.g., Walling v. Crane,* 158 F.2d 80, 83 (5th Cir.1946).

order[ ]." *Sekaquaptewa v. MacDonald,* 544 F.2d 396, 406 (9th Cir.1976), *cert. denied,* 430 U.S. 931, 97 S.Ct. 1550, 51 L.Ed.2d 774 (1977).

■ In this case, the February judgment ordered the Shufflers to pay $190,000 to Heritage by February 15, 1982. It further provided that, if they did not, Heritage was to have the "right" to immediate foreclosure on the Shufflers' two properties on February 17 and 18. The judgment, in effect, gave the Shufflers a period of time to produce the $190,000, and, in return, Heritage was assured it would be able in fact to foreclose on the two properties without delay if Shufflers failed to make timely payment. While the February judgment by its terms simply gave Heritage a right, the district court correctly construed the order to impose on Shufflers the obligation not to impede enforcement of the right.

Given this order, the behavior of the Shufflers after entry of the February judgment was clearly contumacious. By immediately seeking a temporary restraining order further postponing the foreclosure, not based on any non-business reasons such as illness, the Shufflers directly contradicted the court's order to let the properties be sold on February 17 and 18. More significantly, by conveying the two properties to Coastal, the Shufflers directly impeded Heritage's right to a speedy and unobstructed foreclosure.[4]

### B. *Propriety of Sanctions for Contempt.*

The Shufflers argue that, even if they were in contempt, the sanction here was improper in size and in duration. They contend that, although the imposition of some sanction was not outside the discretion of the district court, the order of contempt lacked the findings necessary to sustain the sanction imposed below. We agree and remand for entry of a statement of the purpose or purposes for the fine and adjustment of the sanction to comply with the legal standards governing contempt penalties. *See, e.g., Perfect Fit Industries, Inc. v. Acme Quilting Co.,* 646 F.2d 800, 810 (2d Cir.1981) (order assessing fine for contempt vacated where "district court did not state its reasoning in selecting the fine it imposed," since appellate court "cannot review the propriety of the fine without being informed of its purpose and basis").

■ Sanctions for civil contempt can be imposed for one or both of two distinct purposes: (1) to compel or coerce obedience to a court order, *see, e.g., Shillitani v. United States,* 384 U.S. 364, 370–71, 86 S.Ct. 1531, 1535–36, 16 L.Ed.2d 622 (1966); and (2) to compensate the contemnor's adversary for injuries resulting from the contemnor's noncompliance, *see, e.g., Gompers v. Bucks Stove & Range Co.,* 221 U.S. 418, 448–49, 31 S.Ct. 492, 500–01, 55 L.Ed. 797 (1911). The court here made no written statement of the purpose or purposes underlying its imposition of a $500 daily fine.

### 1. *Coercive Purpose.*

To the extent the $500 daily fine was intended to be coercive, that is, to compel the Shufflers' compliance with the February judgment, the fine as presently assessed is improper for three distinct reasons.

■ First, to the extent the fine was intended to force Shufflers to pay the $190,-000 to Heritage,[5] the fine is unauthorized under Rule 70. The proper means for Heritage to secure compliance with a money judgment is to seek a writ of execution, not to obtain a fine of contempt for the period of non-payment. We recognize that Rule

---

4. Heritage does not argue that the district court based its May contempt order on the Shufflers' filing of a state court suit on May 25, 1982, seeking to enjoin Heritage from foreclosing on the two properties. While the institution of that suit was probably in contempt of the February judgment, it was obviously not before the court at the April hearing on the contempt order and occurred only after (or contemporaneously with) the entry of the May order.

Thus, the filing of the state court suit neither could have formed nor did it form part of the basis of the court's finding of contempt.

5. Such intent is certainly indicated by the court's specific provision for termination of the fine upon the Shufflers' deposit of $190,000 plus interest into the escrow account.

69(a), by stating that "[p]rocess to enforce a judgment for the payment of money shall be a writ of execution, *unless the court otherwise directs,*" Fed.R.Civ.P. 69(a) (emphasis added), seemingly leaves open the possibility of securing payment of a money judgment through the imposition of a contempt sanction. Nonetheless, we do not interpret the exception to execution to permit a federal court to "enforce a money judgment by contempt or methods other than a writ of execution, except in cases where established principles so warrant." *See* 7 J. Moore & J. Lucas, *Moore's Federal Practice* ¶ 69.03[2] (2d ed. 1982); *see Gabovitch v. Lundy,* 584 F.2d 559, 560 n. 1 (1st Cir.1978) ("equitable remedies, even those permitted by Rule 70, are seldom appropriate aids to execution of a money judgment"); *Governor Clinton Co. v. Knott,* 120 F.2d 149, 153 (2d Cir.), *cert. dismissed per stipulation,* 314 U.S. 701, 62 S.Ct. 50, 86 L.Ed. 561 (1941). Heritage points to no exceptional circumstances or established principles in this case permitting Heritage to gain payment of the February judgment by securing a $500 per day fine. Consequently, to the extent the order of contempt was intended to enforce payment, it cannot be sustained.

█ Second, to the extent the fine was intended to compel the Shufflers to let Heritage foreclose on the two properties, by forcing them to negotiate for release of the automatic stay in the Coastal bankruptcy proceeding, imposition of the fine until sale of the properties or actual payment occurred was unwarranted. The fine should have terminated not upon the earlier of the sale of the properties or the deposit of $190,000 into the escrow but upon the date the automatic stay was released. To permit the contempt sanction to run until the date Heritage actually foreclosed on the properties cannot be justified by the only permissible coercive purpose for the May order, which was to coerce the Shufflers into making the properties *available* for foreclosure. As we have stated, the Shufflers were not compelled by the February judgment affirmatively to assist in the foreclosure. When the sole coercive purpose of the civil

contempt order was satisfied, on April 28, the necessity for any coercive sanction ended, and the sanction should have terminated. *See Vincent,* 424 F.2d at 129.

█ Finally, if the fine was designed to coerce Shufflers to allow the foreclosure to go forward, the court must, in determining the size and duration of the fine, "consider the character and magnitude of the harm threatened by continued contumacy, and the probable effectiveness of any suggested sanction in bringing about the result desired." *United States v. United Mine Workers of America,* 330 U.S. 258, 304, 67 S.Ct. 677, 701, 91 L.Ed. 884 (1947). Heritage has not pointed to any portion of the record demonstrating that the district court imposed the fine after a reasoned consideration of these criteria.

## 2. *Compensatory Purpose.*

█ To the extent the fine was intended to be compensatory, the fine must be based on Heritage's actual losses sustained as a result of the contumacy. *Id.; Perfect Fit Industries, Inc., v. Acme Quilting Co.,* 646 F.2d 800, 810 (2d Cir.1981); *Allied Materials Corp. v. Superior Products, Co.,* 620 F.2d 224, 227 (10th Cir.1980).

Here, Heritage points to no evidence in the record demonstrating any actual losses caused by the Shufflers' improper behavior. We cannot uphold the $500 per day fine as lost profits on the $190,000 due under the judgment that Heritage would have earned had the Shufflers not obstructed foreclosure, for the record is barren of any evidence to indicate that Heritage actually incurred a loss in profits in excess of the post judgment interest payable pursuant to 28 U.S.C. § 1961 (1976). Nor is there any evidence in the record to support a finding that Heritage incurred actual damages in the amount of $500 per day in attorney's fees and costs as a result of the Shufflers' contumacy. Absent findings regarding Heritage's actual losses, the fine cannot be sustained as a compensatory remedy.

█ Moreover, even if the fine were imposed to compensate Heritage for actual

losses, the fine should not have run until sale of the properties or actual payment occurred. As we have explained, because the Shufflers were in contempt of the court's February judgment only from February 16, 1983, through April 28, 1983, the fine could properly have been imposed only for Heritage's actual losses resulting from the period of actual contempt. Losses Heritage incurred after that period were not the proper subject of a compensatory contempt sanction, for they were the result not of the Shufflers' failure to obey the February judgment, but Heritage's own decision not to foreclose immediately on the properties once they had been released from the Coastal bankruptcy.

## IV

## CONCLUSION

We affirm the order of civil contempt except as to the size and duration of the fine imposed as a contempt sanction. We remand for entry of a statement of the purpose or purposes for the contempt sanction and a redetermination of the fine to be imposed as an appropriate sanction based on that purpose or purposes.

AFFIRMED in part, REVERSED in part.