In re TETRACYCLINE CASES.

Christopher T. BERNARD; Thomas M. Brothers; Joyce Bruno; Mary Ann Burton; Pamela J. Bynum; Susan Ann Bynum; Barbara S. Carroll; Melanie L. Conway; Jeffrey M. Courtney; Chandel Coy; Renee M. Delich; Debra Dougan; Paul Dougan; Brian F. Dunn; Amy M. Gallas; Donna L. Garrett; Rita S. Haskins; Karen Hublow; Douglas A. Jackson; Bradley Johnson; Eric Johnson; Tracey Johnson; Donna L. Johnston; Katherine G. Lucas; Matthew D. Mac-Donald; Chris L. Manfredi; Dana M. Manfredi; Daniel R. McWhorter; Mark A. Miller; Brenda K. Moretine; Alan D. Napoli; Patricia J. Neely; James L. Pestock; Richard Rangel; Denise L. Rowden; Michelle C. Rowden; Carol T. Schroer; Deborah F. Schulte; Elaine A. Stevenson; Nancy W. Tucker; Anthony Wallace; Denise M. Welch; Diane R. Wilcox; Dean Wilhite; Kert T. Williams; Victor L. Young,

v.

AMERICAN CYANAMID COMPANY; Bristol Laboratories; E.R. Squibb & Sons; Lederle Laboratories, Inc.; Pfizer Pharmaceuticals; Pfizer, Inc.; Roerig; The Upjohn Company, Appellees,

James I. Peck, IV, Appellant.

No. 90–1575.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 16, 1990.

Decided March 6, 1991.

James I. Peck, IV, West Orange, N.J., pro se.

Patrick Lysaught, Kansas City, for appellees.

Before BOWMAN, Circuit Judge, HENLEY, Senior Circuit Judge, and CONMY,* Chief District Judge.

HENLEY, Senior Circuit Judge.

James I. Peck, IV, Esq., appeals from an order of the district court finding him in contempt. We dismiss the appeal for lack of jurisdiction.

This appeal arises from a lengthy and complicated set of facts, which we need only summarize at this time. In brief, the relevant facts are as follows. In July, 1983 the claims of more than 1700 plaintiffs seeking damages allegedly resulting from ingestion of tetracycline-based antibiotics manufactured by, among others, Pfizer Inc. were consolidated in the United States District Court for the Western District of Missouri for preliminary discovery. The court entered several protective orders, including an order entered on August 28, 1985, known as the "Special Limited Entry of Appearance." The order established a

---

* The Honorable Patrick A. Conmy, Chief Judge, United States District Court, District of North Dakota, sitting by designation.

procedure by which an attorney who represented a plaintiff who was not a party in the consolidated action could examine the protected documents, if the attorney agreed to abide by the conditions of the order and to submit to the jurisdiction of the court for any violation of the order. Peck, a New Jersey attorney, entered an appearance under the order and travelled to Kansas City, Missouri to inspect the documents. On October 31, 1986, Peck was examining the documents when his examination was cut short by a telephone call from the district court informing him that the court had stayed the limited entry of appearance order. On November 3, 1986 the district court vacated the order.

Peck then filed discovery motions in the New Jersey state court requesting that Pfizer produce all of the protected documents. Over Pfizer's objection, on June 15, 1988 the state court granted Peck's request and ordered Pfizer to produce "all discovery materials it provided or made available to counsel for the plaintiffs in the Kansas City, Missouri tetracycline ... personal injury actions...." When Pfizer refused to comply, in April, 1989 the state court compelled discovery.

Pfizer then requested that the district court clarify the scope and application of the limited entry of appearance order and the vacation of the order. On May 8, 1989 the district court issued an order stating, among other things, that

> when the special limited entry of appearance procedure was abolished, it was the court's intent to preclude litigants in other jurisdictions from obtaining the discovery documents and materials produced or created by the parties herein, and it is the court's intent that parties to litigation in other jurisdictions shall not be able to obtain indirectly, through discovery in such jurisdictions, the materials which they could not now obtain directly because of the abolishment of [the] special limited entry of appearance procedure, and therefore, the parties are ordered that they shall not produce any of the ... discovery materials herein to attorneys for plaintiffs in other jurisdictions.

In November, 1989 Pfizer requested that the district court hold Peck in contempt for violation of the protective orders. On March 5, 1990 the district court entered an order finding Peck in contempt for a willful violation of the August 28, 1985 limited entry of appearance order and related orders. The court ordered Peck to withdraw discovery requests pending in the state court and compensate Pfizer "for all fines or costs levied against [it] by New Jersey courts for failure to produce protected materials" and for Pfizer's costs "for attorney['s] fees, duplication, and court appearances to assert and defend [its] rights under the protective orders." The court ordered Pfizer's counsel to submit "a bill of attorney's fees and costs incurred in opposing Mr. Peck's attempt to obtain protected documents." The court stated "[u]pon review, this court will determine an amount which shall be reimbursed by Mr. Peck to Pfizer. The determination will be considered a final judgment for purposes of execution or appeal." On April 3, 1990 Peck filed a notice of appeal from the March 5 contempt order. At the time Peck filed the notice of appeal, Pfizer had not yet submitted its statement.

■ On appeal Peck raises what appear to be troubling challenges to the contempt order. Pfizer asserts that this court lacks jurisdiction to review the challenges. Pfizer argues that the March 5 contempt order was not a final order under 28 U.S.C. § 1291 because the district court had not determined the amount of sanctions. Pfizer relies on *SEC v. Naftalin*, 460 F.2d 471, 475 (8th Cir.1972), in which this court held that a contempt order was not final until a sanction was imposed. The court explained that "[u]ntil a ... sanction has been made to exist as to a contempt adjudication, the situation is lacking in the elements of operativeness and consequence necessary to be possessed by any judicial order to enable it to have the status of a final decision under § 1291." Peck asserts that *Naftalin* is distinguishable because in that case the district court had not imposed a sanction, whereas in this case the court imposed a

sanction, but had not determined the amount. We disagree.[1]

"Civil contempt sanctions may be imposed for either or both of two distinct purposes, to coerce compliance with a court order, and to compensate the complainant for actual losses sustained by him as a result of the defendants' contumacy." *In re Chase & Sanborn Corp.*, 872 F.2d 397, 400–01 (11th Cir.1989) (prior and subsequent history omitted). Generally, a compensatory sanction "may not exceed the actual loss to the complainant caused by the actions of respondent, lest the contempt fine become punitive in nature, which is not appropriate in a civil contempt proceeding." *NLRB v. Laborer's Int'l Union*, 882 F.2d 949, 955 (5th Cir.1989). In this case, the district court awarded compensatory damages to Pfizer in the amount of its costs incurred in opposing Peck's attempt to obtain the protected documents.[2]

We agree with Pfizer that in the absence of the amount of the compensatory sanction the contempt order is not final because it lacks "consequence." *Naftalin*, 460 F.2d at 475. In an analogous context, this court has held that "an order awarding attorney['s] fees without determining the specific amount of that award is not a final and appealable order." *In re Modern Textiles, Inc.*, 900 F.2d 1184, 1192 (8th Cir. 1990). In fact, Peck appears to concede that the amount of the sanction is crucial in establishing finality for purposes of appeal. Peck asks this court to find that the mone-

tary sanction was excessive, based on his speculation that Pfizer's "eventual claim could amount to tens of thousands of dollars—a potentially ruinous charge for appellant, a single practitioner." Peck must realize that this court cannot review this claim, absent the district court's determination of the amount.

Accordingly, we dismiss the appeal for lack of jurisdiction. The dismissal is, of course, without prejudice to Peck filing a timely notice of appeal from a final order.

---

1. We agree with Peck that as a general rule a contempt order against a nonparty is immediately appealable. *See, e.g., United States v. Accetturo*, 842 F.2d 1408, 1412 (3d Cir.1988). The rule, however, is subject to the qualification that the contempt order must contain both a finding of contempt and imposition of a sanction. *See Petroleos Mexicanos v. Crawford Enter., Inc.*, 826 F.2d 392, 398 (5th Cir.1987).

2. Because the sanction in this case is compensatory, Peck's reliance on *Shuffler v. Heritage Bank*, 720 F.2d 1141, 1145 (9th Cir.1983), is misplaced. In *Shuffler* the court held that failure of the district court to quantify the amount of a coercive sanction did not deprive the appellate court of jurisdiction, because the sanction was dependent on the length of the contumacious conduct.

We note that the award of attorney's fees was not an award of fees to the prevailing party for costs incurred in the contempt proceeding. *See Shakman v. Democratic Organization of Cook County*, 533 F.2d 344, 351 (7th Cir.) (award of attorney's fees to prevailing party in contempt proceeding in addition to compensatory sanction is proper and independent of damage award), *cert. denied*, 429 U.S. 858, 97 S.Ct. 156, 50 L.Ed.2d 135 (1976). In such case, a pending motion for attorney's fees perhaps would not affect the finality of a contempt order. *See Budinich v. Becton Dickinson & Co.*, 486 U.S. 196, 202, 108 S.Ct. 1717, 1721–22, 100 L.Ed.2d 178 (1988) ("unresolved issue of attorney's fees for the litigation in question does not prevent judgment on the merits from being final").