MARSHALL, Ray, Secretary of Labor, U. S. Department of Labor

In the Matter of Establishment Inspection of Whittaker Corp., Berwick Forge & Fabricating Co., a division,

v.

WHITTAKER CORP., BERWICK FORGE & FABRICATING CO., a division,

Berwick Forge & Fabricating Company, a division of Whittaker Corporation, Appellant.

No. 79–1120.

United States Court of Appeals, Third Circuit.

Argued Oct. 12, 1979.

Decided Nov. 16, 1979.

47. *In re Worksite Inspection of Quality Products, Inc.*, 592 F.2d 611, 616 (1st Cir. 1979).

Carin A. Clauss, Sol. of Labor, Benjamin W. Mintz, Associate Sol. for Occupational Safety and Health, Allen H. Feldman, Acting Counsel for Appellate Litigation, Charles I. Hadden (argued), Thomas L. Holzman, Attys., U. S. Department of Labor, Washington, D.C., Marshall Harris, Regional Sol., Philadelphia, Pa., for appellee.

Ronald M. Gaswirth (argued), Jane A. Matheson, James L. Morris, Gardere, Wynne, Jaffee & DeHay, Dallas, Tex., Lewis H. Markowitz, Markowitz, Kagen & Griffith, York, Pa., for appellant.

Before ADAMS, ROSENN and WEIS, Circuit Judges.

## OPINION OF THE COURT

ADAMS, Circuit Judge.

This appeal, similar to but considered separately from *Babcock & Wilcox Co. v. Marshall*, decided today,[1] presents thorny issues regarding mootness and exhaustion of administrative remedies in the context of the latest skirmish between the Occupational Safety and Health Administration (OSHA) and Berwick Forge and Fabricating Company (Berwick), a division of the Whittaker Corporation, as to what legal process must be undertaken and what legal standards must be met before OSHA officials may inspect a manufacturing plant. Because we decide that one portion of this appeal is moot, and that the remaining questions are better left for consideration—in the first instance—to another forum, we do not reach the merits.

### I.

Consensual safety inspections of Berwick's large manufacturing plant, located in northeast Pennsylvania, had occurred approximately once a year from 1974 through June 3, 1977. When an OSHA inspector returned to the plant on June 8, 1977, to complete the last-mentioned inspection, Berwick denied him entry on the basis of an alleged compliance agreement between the parties whereby OSHA would not inspect Berwick's premises for the term of the agreement.[2]

Acting on an employee's complaint regarding an unsafe item of equipment, OSHA sent an inspector to the Berwick plant, but he was again denied entry in March 1978. Both parties then took the dispute to the district court for the Middle District of Pennsylvania. Berwick sought declaratory and injunctive relief from any inspection of its property during the term of the alleged compliance agreement, and OSHA applied for a general inspection warrant.

OSHA's request for a general inspection warrant was denied by the district court on the ground that a complaint about a specific unsafe area did not constitute probable cause for a general inspection.[3] *Whittaker Corp. v. OSHA*, 6 OSHC (BNA) 1492, 1494 (M.D.Pa. March 7, 1978), *appeal dismissed for lack of an appealable order*, 594 F.2d 855 (3d Cir. 1979). Subsequently, the district court granted a warrant to inspect only the area of the plant mentioned in the complaint. *Whittaker Corp. v. OSHA*, 6 OSHC (BNA) 1295 (M.D.Pa. March 9, 1979).

The present appeal arises from a general inspection warrant granted by a United States Magistrate on October 10, 1978. Armed with the warrant, an OSHA compliance officer arrived at the plant the next day, but was asked to wait while Berwick's president conferred with company counsel. When three hours passed without a reply, the OSHA official decided that entry was effectively denied and he left.

Attorneys for the parties then met in the district court once again, with Berwick filing a motion to quash the warrant and OSHA requesting that Berwick be adjudged in civil contempt for refusing to honor the warrant. On October 18, 1978, Chief Judge Nealon (1) held Berwick in civil contempt, (2) ordered Berwick to purge the contempt by permitting the inspection pursuant to the warrant, and (3) denied Ber-

---

1. 610 F.2d 1128 (3d Cir. 1979).

2. In October 1976, Berwick arranged a meeting with OSHA's regional officials in Philadelphia. Berwick contended that it wished to seek advice about how to upgrade its two turn-of-the-century plants to bring them into compliance with OSHA's safety regulations over a fifteen-month period. It further asserted that the

OSHA officials agreed not to inspect the plants during the fifteen-month period of its compliance efforts. The reported decisions and briefs give no reason why Berwick admitted the OSHA inspector on June 3.

3. These inspections, covering an entire worksite, are called "wall to wall" in OSHA parlance.

wick's motion to quash the warrant. No coercive penalty was imposed.

The inspection pursuant to the warrant and order to purge the contempt began the next day and continued until December 19, 1978. Return on the warrant was extended twice by the magistrate—the second time by stipulation of the parties. As a result of the inspection, citations proposing penalties of $300,000 were issued by OSHA and challenged in timely fashion by Berwick, whereupon the matters were assigned to an Administrative Law Judge of the Occupational Safety and Health Review Commission (Review Commission), an independent administrative tribunal.

■■■ Berwick did not file its notice of appeal and motion to enjoin or stay inspection of its property until December 18, 1979, the last day for doing so under Fed.R. App.P. 4(a).[4] In its appeal, Berwick attacks all three segments of the district court's order. As to the first portion of the order, we find no reason to depart from the rule enunciated by various courts of appeals that an appeal is moot once civil contempt has been purged.[5] As to the second and third portions of the order, we conclude that, although they are not moot in the constitutional sense that no live controversy remains,[6] considerations of equity and judicial policy dictate deferral of the remaining legal issues to the forum designated by Congress to consider them.

## II.

A series of cases indicate that the following factors should be considered in deciding the reviewability of an appeal that in some sense is moot: (1) whether the appellant has expeditiously taken all steps to perfect the appeal before the dispute becomes moot, (2) whether the trial court's order will have collateral legal consequences, and (3) whether the dispute is of such a nature that it is capable of repetition yet evading review. In determining whether we may decide the merits of this appeal, it is necessary first to ascertain whether Berwick's situation comes within any of these categories.

A. *Expeditious Action to Preserve the Status Quo*

■ An exception to mootness in a criminal conviction where, even if the appellant had been released from custody or had served his sentence, he had "taken all possible steps to have the order of confinement promptly reviewed prior to his release" was established by this Court in *United States v. Frumento*, 552 F.2d 534, 537 (3d Cir. 1977) (in banc) (citing *St. Pierre v. United States*, 319 U.S. 41, 63 S.Ct. 910, 87 L.Ed. 1199 (1943)). The " 'prompt, diligent and timely' actions" that brought the appellant in *Frumento* within the reviewability exception to

---

4. As time is calculated under Fed.R.Civ.P. 6(a), the notice of appeal was filed exactly sixty days after the trial court's order. The question whether the district court's order is final and therefore appealable under 28 U.S.C. § 1291 (1976) was not raised by either party, but is a matter we must consider on our own initiative. An adjudication of civil contempt is not ordinarily appealable, but when the contempt proceeding is the sole court proceeding and there is nothing left for the district court to do, the order is appealable. *See Babcock & Wilcox Co. v. Marshall*, 610 F.2d 1128 (3d Cir. 1979) (relying on *Cobbledick v. United States*, 309 U.S. 323, 330, 60 S.Ct. 540, 84 L.Ed. 783 (1940)); *In re Restland Memorial Park*, 540 F.2d 626, 627 n.3 (3d Cir. 1976); *International Business Machines Corp. v. United States*, 493 F.2d 112, 115 n.1 (2d Cir. 1973), *cert. denied*, 416 U.S. 995, 94 S.Ct. 2409, 40 L.Ed.2d 774 (1974).

5. *See, e. g., SEC v. Sloan*, 535 F.2d 679, 680 (2d Cir. 1976) (per curiam), *cert. denied*, 430 U.S. 966, 97 S.Ct. 1646, 52 L.Ed.2d 357 (1977); *In re Berry*, 521 F.2d 179, 181 (10th Cir.), *cert. denied*, 423 U.S. 928, 96 S.Ct. 276, 46 L.Ed.2d 256 (1975); *United States v. Watson Chapel Sch. Dist. No. 24*, 446 F.2d 933, 938 (8th Cir. 1971), *cert. denied*, 404 U.S. 1059, 92 S.Ct. 739, 30 L.Ed.2d 747 (1971); *cf. Washington Metropolitan Area Transit Auth. v. Amalgamated Transit Union*, 174 U.S.App.D.C. 285, 531 F.2d 617, 620 (D.C.Cir.1976) (appeal from preliminary injunction moot once already obeyed).

6. *See Hall v. Beals*, 396 U.S. 45, 48, 90 S.Ct. 200, 201–202, 24 L.Ed.2d 214 (1969) (case moot and therefore not justiciable if, through passage of time, it has "lost its character as a present, live controversy of the kind that must exist if we are to avoid advisory opinions on abstract propositions of law").

the mootness doctrine, this Court held, were his immediate attempts to secure a stay of the district court's order from the district court, from a panel of this Court, and finally from the Court in banc. *Id.*[7]

The contrast between *Frumento* and this case is striking. Berwick's actions, barely timely, were far from diligent or prompt. Indeed, Berwick waited until the very last day that an appeal could be taken to file its notice of appeal and motion to enjoin or stay the inspection of its plant—an inspection that had been in operation for almost two months and was completed the following day. Berwick's less-than-expeditious pace in attempting to protect a right to be free of an alleged constitutional violation that, if indeed a violation, was already fully accomplished,[8] precludes reliance in these circumstances on the *Frumento* exception to mootness.

### B. *Collateral Legal Consequences of the District Court's Order*

A judgment of civil contempt becomes moot after being purged because the court's order cannot be disobeyed again: to purge a civil contempt citation is to comply with all aspects of the underlying order. Additionally, purging the contempt eradicates any effect of a violation.[9] Unlike a criminal conviction or involuntary commitment to a mental hospital,[10] an adjudication of civil contempt carries with it no possibility of collateral deprivations of civil rights or other specifically legal consequences.[11] Moreover, our conclusion that the judgment of civil contempt is moot deprives the trial court's order of any precedential or res judicata effects, inasmuch as the settled practice in federal civil cases that become moot on appeal is to vacate the district court's judgment and remand with an instruction to dismiss the complaint.[12]

7. *But cf. Bagby v. Beal*, 606 F.2d 411, at 413, (1979) (appeal held moot despite fact that appellant filed immediate request for stay of injunction pending appeal, which was never acted on by district court).

8. The Supreme Court has stated that a Fourth Amendment injury is fully accomplished by a search made without probable cause, and subsequent proceedings based on an illegal search work no new constitutional injury. *United States v. Calandra*, 414 U.S. 338, 354, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974).

9. *See County of Los Angeles v. Davis*, 440 U.S. 625, 631, 99 S.Ct. 1379, 1383, 59 L.Ed.2d 642 (1979) ("[J]urisdiction, properly acquired may abate if the case becomes moot because (1) it can be said with assurance that 'there is no reasonable expectation . . .' that the alleged violation will recur, . . . and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation.")

10. *See, e. g., Sibron v. New York*, 392 U.S. 40, 55, 88 S.Ct. 1889, 1898, 20 L.Ed.2d 917 (1968) (in criminal cases "the Court abandoned all inquiry into the actual existence of specific collateral consequences and in effect presumed that they existed"); *Jessup v. Clark*, 490 F.2d 1068, 1070 (3d Cir. 1973) (collateral consequences of a criminal conviction may include professional disciplinary proceedings and prohibition against holding certain offices or engaging in certain businesses); *In re Ballay*, 157 U.S.App.D.C. 59, 62-63, 482 F.2d 648, 651-52 (D.C.Cir.1973) (involuntary civil commitment

under label of mental incompetence may bring state restrictions on voting rights, rights to serve on jury, restrictions on ability to obtain drivers license, and may increase the likelihood of subsequent commitment).

11. Other than potential loss of employment, mentioned in *Street v. New York*, 394 U.S. 576, 579 n.3, 89 S.Ct. 1354, 22 L.Ed.2d 572 (1969), the Supreme Court has not based an exception to mootness on any nonlegal consequence. *See* Note, *The Mootness Doctrine in the Supreme Court*, 88 Harv.L.Rev. 373, 381 n.38 (1974).

12. *United States v. Munsingwear*, 340 U.S. 36, 39, 71 S.Ct. 104, 95 L.Ed. 36 (1950); *Bagby v. Beal*, 606 F.2d 411 (3d Cir. 1979). Vacating the district court's judgment of civil contempt should satisfy Berwick's concern that the court's order may work further injury by Berwick's being considered a recidivist in any future proceeding. It is doubtful, however, that a company that had purged its civil contempt would be characterized as a recidivist in a subsequent contempt proceeding. *Cf. In re Application to Adjudge Ohio New and Rebuilt Parts, Inc. and Melvin Booher in Civil and Criminal Contempt*, No. C 79 214 (N.D.Ohio May 1, 1979) (holding corporation and its president in criminal contempt because previous order of civil contempt had *not* been purged). We also note that had Berwick been convicted of criminal contempt, as is within the discretion of the district court under 18 U.S.C. § 401(3), the analysis of reviewability required of us would obviously be different.

**C. Capable of Repetition, Yet Evading Review**

 Berwick places primary reliance for reviewability on the venerable exception to mootness for cases "capable of repetition, yet evading review."[13] As we stated in *Dow Chemical Co. v. EPA*, 605 F.2d 673 (3d Cir. 1979), "Most cases utilizing this approach have involved official action that by its very nature could not, or probably would not, be able to be adjudicated while fully 'live.'" 605 F.2d at 678 n.12. Examples include short-term orders of a federal regulatory agency,[14] restrictions on candidacy or participation in state elections,[15] anti-abortion statutes,[16] and durational residency requirements.[17]

In the matter sub judice, at least, Berwick's lack of prompt and diligent action in taking an appeal is also determinative of whether the case is one capable of repetition yet evading review. In contrast to the examples listed above, there is nothing inherent in the type of injury alleged by Berwick that would evade review. It is apparent that, had Berwick taken prompt steps to preserve the status quo by immediately filing a notice of appeal and a request for a stay, the inspection it complains of might not have occurred. Thus, the issues could have been preserved for appeal and would not evade review.

The circumstances here are, accordingly, a far cry from those emphasized by this Court in *United States v. Schiavo*, 504 F.2d 1 (3d Cir. 1971) (in banc), *cert. denied*, 419 U.S. 1096, 95 S.Ct. 690, 42 L.Ed.2d 688 (1974), an appeal held to be not moot because the dispute was capable of repetition

yet evading review. *Id.* at 7. The appellants in *Schiavo*, Philadelphia newspapers, were enjoined not to publish information concerning criminal indictments pertaining to a case then on trial. It was clear in *Schiavo* that the type of injunction in question would invariably be dissolved as soon as the trial was over; moreover, the appellants filed a notice of appeal and motion to stay the injunction pending appeal on the same afternoon that the injunction was issued.

It is thus apparent that the judgment of civil contempt against Berwick will have no continuing legal effect, and any challenge to that portion of the district court's order is moot. The discussion of mootness cannot end here, however, because it is also apparent that the very act of purging the contempt—allowing OSHA to inspect—has a continuing effect inasmuch as citations based on the inspection were issued by OSHA and are being contested by Berwick. It therefore remains for us to consider the constitutional and policy implications of reviewing the merits of the denial of the motion to quash and the order to comply with the warrant.

**III.**

Although cases show that these portions of the appeal are not constitutionally moot, they also emphasize policy elements to the decision, so that we may still require exhaustion of administrative remedies before considering Berwick's claims as to the warrant's invalidity. This Court held in *American Bible Society v. Blount*, 446 F.2d 588, 595 (3d Cir. 1971), that "a case is not moot

---

13. The language and doctrine are from *Southern Pac. Terminal Co. v. ICC*, 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310 (1911).

14. *See id.*

15. *See, e. g., First Nat'l Bank v. Bellotti*, 435 U.S. 765, 98 S.Ct. 1407, 55 L.Ed.2d 707 (1978) (election campaign would terminate before bar to corporate participation could be litigated); *Moore v. Ogilvie*, 394 U.S. 814, 89 S.Ct. 1493, 23 L.Ed.2d 1 (1969) (challenge to state petition requirement for independent candidates in already completed election).

16. *E. g., Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973).

17. *See Sosna v. Iowa*, 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975) (class action) ("[T]he case before us is one in which state officials will undoubtedly continue to enforce the challenged statute and yet, because of the passage of time, no single challenger will remain subject to its restrictions for the period necessary to see such a lawsuit to its conclusion."); *Dunn v. Blumstein*, 405 U.S. 330, 333 n.2, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972).

if there is a reasonable likelihood that the parties or those in privity with them will be involved in a suit on the same issues in the future." *Accord, Klein v. Califano,* 586 F.2d 250, 256 (3d Cir. 1978) (in banc).

In *American Bible Society,* a group of mass mailers of books sought to block the Post Office from instituting new regulations affecting the cost of bulk mailings of books. Preliminary injunctions were granted on the condition, required by Fed.R. Civ.P. 65(c), that security be posted to indemnify the Post Office in the event it was held that the preliminary injunctions had been wrongfully granted. Before the conclusion of the proceedings, the parties reached accord on a new plan for allocating the costs of the bulk mailings. The plaintiffs' subsequent motion to dismiss their suits and discharge the bonds was opposed by the Post Office, which sought to recover damages incurred by complying with the preliminary injunction that it claimed had been wrongfully issued. The district court held the case to be moot. We reversed, however, on the ground that judicial economy would be better served by adjudicating the merits directly rather than waiting for the Post Office to challenge the merits of the preliminary injunction in an independent action on the bond.[18]

A similar issue was faced in *Klein v. Califano,* 586 F.2d 250 (3d Cir. 1978) (in banc), in which the Department of Health, Education and Welfare had been enjoined not to terminate federal funding of a nursing home without first affording the residents of the home an evidentiary hearing.

Subsequent to the district court's order, and the agency's appeal from it, the nursing home was re-certified for eligibility and the threat of termination of federal funding was removed. Nonetheless, the case was not moot, we declared, because the agency had asserted a right to recoup funds disbursed pursuant to the injunction; if the merits of the injunction were not directly adjudicated on appeal, the district court's order would have to be collaterally challenged in a separate proceeding. We held that "the availability of a forum to collaterally challenge the district court's order does not imply that [the agency's] direct appeal is moot." *Id.* at 255–56 (citing *Liner v. Jafco, Inc.,* 375 U.S. 301, 84 S.Ct. 391, 11 L.Ed.2d 347 (1964)).

▬ The lesson of *American Bible Society* and *Klein* for this case is that an appeal will not be deemed moot if the parties are likely to contest the same issues in a subsequent proceeding.[19] Mootness, however, is not solely a jurisdictional doctrine. Policy considerations underlying the concept are said to be prevention of "useless expenditure of judicial resources and assur[ance] that the courts will not intrude prematurely into policymaking in a manner that will unnecessarily constrain the other branches of government,"[20] as well as "[m]aintaining flexibility in the law by not creating unnecessary precedent."[21]

Policy considerations will often weigh in favor of considering all questions raised directly on the appeal, rather than relegating the parties to re-try their contentions in a

18. *Cf. Liner v. Jafco, Inc.,* 375 U.S. 301, 305, 84 S.Ct. 391, 394, 11 L.Ed.2d 347 (1964), (possibility of suing on injunction bond gave petitioners " 'a substantial stake in the judgment' "). *But cf. Bagby v. Beal,* 606 F.2d 411 (3d Cir. 1979) (appeal from adjudication of violation of due process rights became moot after the hearing was held pursuant to district court's injunction, despite appellant's attempt to stay injunction and despite court's award of attorney's fees against appellant; collateral consequence of trial court order—award of attorney's fees—could not be eliminated by reversing the case on the merits, since the standard for award of attorney's fees is whether plaintiff prevailed—*i.*

*e.,* obtained what she requested—rather than whether the judgment on the merits was correct).

19. *Cf. United States v. W. T. Grant Co.,* 345 U.S. 629, 632, 73 S.Ct. 894, 897, 97 L.Ed. 1303 (1953) ("public interest in having the legality of the practices settled, militates against a mootness conclusion").

20. Note, *supra* note 11, at 376.

21. P. Bator, D. Shapiro, P. Mishkin & H. Wechsler, Hart and Wechsler's The Federal Courts and The Federal System 110 (2d ed. 1973).

different forum.[22] Indeed, if we considered this case in isolation, a thrifty use of judicial resources might well require that we consider Berwick's challenge to the validity of the warrants at this time.

 Numerous cases of this type, however, involving challenges to the validity of OSHA inspection warrants are now coming before federal courts, and considerations of judicial economy in this general class of litigation outweigh any saving of judicial time that would be achieved by adjudicating the merits in this particular proceeding. We therefore hold, for reasons elaborated more fully in *Babcock & Wilcox, supra,* that when, as here, an inspection warrant has been executed, a party aggrieved by the inspection must ordinarily exhaust administrative remedies before bringing an appeal to this Court. The policy embodied in the requirement of exhaustion of administrative remedies—avoidance of premature constitutional adjudication and deference to a statutory scheme setting up an administrative tribunal as the exclusive forum for review of OSHA inspections and citations in the first instance—outweighs any saving of judicial resources that would come from deciding the merits of this appeal at this time.[23]

The order of the district court adjudicating Berwick to be in civil contempt will be vacated; those portions of the district court's order denying Berwick's motion to quash the warrant and directing it to purge the contempt by complying with the warrant will be affirmed; the underlying dispute as to whether evidence obtained pursuant to the warrant should be suppressed will be preserved for consideration by the Review Commission; and the case will be remanded to the district court for action consistent with this opinion. Each side to bear its own costs.

---

**22.** *Cf. Sibron v. New York,* 392 U.S. 40, 56–57, 88 S.Ct. 1889, 1899, 20 L.Ed.2d 917 (1968) ("It is always preferable to litigate a matter when it is directly and principally in dispute, rather than in a proceeding where it is collateral to the central controversy.")

**23.** Because we do not reach the merits of any of Berwick's challenges to the inspections, it is not our intention in our order to preclude Ber-

wick from raising those issues in the Review Commission proceedings or in any subsequent appeal to this Court for review of those proceedings. Review in this Court of any determination by the Review Commission will be available as of right to Berwick if that tribunal does not resolve the issues to Berwick's satisfaction. *See* 29 U.S.C. § 660(a) (1976).