UNITED STATES of America, Appellee,

v.

Wilfred JOHNSON, Defendant-Appellant.

No. 1250, Docket 86–1118.

United States Court of Appeals, Second Circuit.

Argued April 8, 1986.

Decided Sept. 16, 1986.

---

Richard A. Rehbock, New York City, for defendant-appellant.

Diane F. Giacalone, Asst. U.S. Atty. (Reena Raggi, U.S. Atty., E.D.N.Y., Allyne R. Ross, Asst. U.S. Atty., of counsel), for appellee.

Before VAN GRAAFEILAND, WINTER and MINER, Circuit Judges.

WINTER, Circuit Judge:

Wilfred Johnson, a defendant in the underlying criminal prosecution, appeals from Judge Nickerson's order holding him in contempt for his refusal to testify as a government witness at a preliminary hearing pursuant to a grant of use immunity. Johnson claims that his status as an indicted co-defendant in the action provides him with an absolute privilege to refuse to testify, and asks that the contempt order be vacated. Because Johnson is a defendant in the underlying proceeding and because the contempt sentence ended before this appeal was heard, issues regarding appellate jurisdiction and mootness must be addressed. We dismiss the appeal as moot.

## BACKGROUND

This appeal arises out of a criminal prosecution brought against Johnson and nine others on two counts of racketeering, in violation of 18 U.S.C. § 1962(c) and (d) (1982), for their alleged participation in the affairs of the Gambino crime family. After the indictment, the government identified Johnson as an informant for the Federal Bureau of Investigation ("FBI") and moved to have him detained on the ground that he was likely to flee. At the detention hearing Johnson voluntarily testified, denying that he had ever been a government informant. The district court found to the contrary, however, and ordered him detained.

During pre-trial discovery, portions of Johnson's FBI informant file were disclosed to his co-defendants. They then filed joint pre-trial motions to exclude from evidence all hearsay statements made by Johnson that the government intended to offer as statements by a co-conspirator under Fed.R.Evid. 801(d)(2)(E). Co-defendants argued that because Johnson was an FBI informant during the period charged in the indictment, his declarations could not have been in furtherance of the alleged conspiracy and were therefore inadmissible under Rule 801(d)(2)(E). In response, the government argued that Johnson possessed the requisite criminal intent when he participated in the criminal activity charged in the indictment despite his status as an informant. Because of this intent, the government argued, Johnson continued to be a co-conspirator, and his statements were not automatically inadmissible.

Judge Nickerson ruled that the critical issue was Johnson's state of mind at pertinent times during the alleged conspiracy. To establish that state of mind, the government called Johnson as its first witness at a pre-trial hearing held on February 21, 1986. Johnson refused to testify, however, invoking his fifth amendment privilege against self-incrimination. The government applied to the court for a grant of use immunity, under which Johnson's compelled testimony could not be used against him in any criminal case, including the present one. *See* 18 U.S.C. §§ 6002 *et seq.* (1982). Judge Nickerson granted the use immunity and directed Johnson to testify. Johnson again refused to testify, and Judge Nickerson held him in civil contempt. The court committed Johnson until the conclusion of the pre-trial hearing or until he purged his contempt, whichever occurred first. Johnson continued to refuse to testify, and the pre-trial hearing concluded on March 6, 1986. Judge Nickerson found that Johnson's statements were those of a co-conspirator and thus admissible upon a showing that they were in furtherance of the conspiracy. When the hearing concluded, Johnson's contempt sentence expired as well. We heard the appeal on April 8.

### DISCUSSION

■ We raise the question of our jurisdiction *sua sponte*. *See In Re Adirondack Railway Corp.*, 726 F.2d 60, 62 (2d Cir. 1984). It is well established that a party to a pending proceeding may not appeal from an order of civil contempt except as part of an appeal from a final judgment. *Fox v. Capital Co.*, 299 U.S. 105, 107, 57 S.Ct. 57, 58, 81 L.Ed. 67 (1936); *see also Securities and Exchange Commission v. Sloan*, 535 F.2d 679, 680 (2d Cir.1976) (per curiam) ("An order of civil contempt against a party to litigation is not an appealable final order."), *cert. denied,* 430 U.S. 966, 97 S.Ct. 1646, 52 L.Ed.2d 357 (1977). However, adjudications of criminal contempt are appealable prior to final judgment, *Matter of Christensen Engineering Co.*, 194 U.S. 458, 24 S.Ct. 729, 48 L.Ed. 1072 (1904), and a non-party witness may immediately appeal an order of civil contempt. *Lamb v. Cramer*, 285 U.S. 217, 52 S.Ct. 315, 76 L.Ed. 715 (1932). *See generally* 15 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3917 (1976).

■ The general rule that orders of civil contempt against parties in pending litigation are not immediately appealable prevents interlocutory appeals that fragment the disposition of "what for practical purposes is a single controversy." *Cobbledick v. United States*, 309 U.S. 323, 325, 60 S.Ct. 540, 541, 84 L.Ed. 783 (1940). The merits of the contempt order against a party can be challenged on appeal from a final judgment to the extent the order affects the judgment or carries with it collateral legal consequences.

■ The general rule prohibiting appeals from civil contempt citations by parties to litigation has been developed in civil cases. Although direct precedent appears to be lacking, we perceive no reason to refrain from applying this general rule to defendants in criminal proceedings. If such a defendant wishes to avoid the contempt sentence, he may testify with confidence that he will be able to attack the merits of the contempt order to the extent it affects a final judgment of conviction. For example, if Johnson had testified at the pre-trial hearing and were subsequently convicted, he could certainly raise as a ground for overturning his conviction any improper use of his compelled pre-trial testimony at the main trial. We recognize that this rule affords little protection to a party faced with a contempt order that is unlikely to affect the final judgment. However, this harsh result is not unique to criminal cases but inheres in the rule as applied in civil cases.

■ Appealability of the order against Johnson is not necessarily foreclosed, however. Johnson claims that as a criminal defendant he cannot be compelled to be a witness for any purpose or at any point in that proceeding, *whether or not testifying tends to incriminate him or to affect the jury's decision regarding his guilt or in-*

*nocence.* His claim of a constitutional right not to testify is thus closely analogous to an assertion of an absolute immunity from taking the stand.

To the extent that the district court's order denied a claim of immunity, it is arguably appealable under the "collateral order" doctrine of *Cohen v. Beneficial Industrial Loan Corp.,* 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). The Supreme Court has held that "[a] major characteristic of the denial or granting of a claim appealable under *Cohen's* 'collateral order' doctrine is that 'unless it can be reviewed before [the proceedings terminate], it can never be reviewed at all.'" *Mitchell v. Forsyth,* 472 U.S. 511, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985) (quoting *Stack v. Boyle,* 342 U.S. 1, 12, 72 S.Ct. 1, 7, 96 L.Ed. 3 (1951) (opinion of Jackson, J.)). In *Mitchell,* the Court noted that district court decisions are appealable when they have denied a "defendant's claim of right not to stand trial on double jeopardy grounds." *Mitchell,* 105 S.Ct. at 2815; *see also Abney v. United States,* 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977). *Mitchell* also noted that the "denial of a substantial claim of absolute immunity is an order appealable before final judgment" on analogous grounds. 105 S.Ct. at 2815. The rationale offered was that "the essence of absolute immunity is its possessor's entitlement not to have to answer for his conduct in a civil damages action." *Id.* Because "[t]he entitlement is an *immunity from suit rather than a mere defense to liability ... it is effectively lost if a case is erroneously permitted to go to trial.*" Id. *at 2816.*

A claim such as Johnson's appears to raise analogous concerns. The essence of his claim is not that the testimony will incriminate him, an issue that can be determined on appeal after trial, but that he has an absolute immunity from giving testimony, whether or not it incriminates him. Like a claim of double jeopardy or immunity from a suit for damages, Johnson's claim of a right to remain silent is "effectively lost" if he is forced to testify. Consequently, we believe that there is a color-

able argument that the district court's rejection of Johnson's claim of absolute immunity is appealable.

We need not determine this, however, because the claim of absolute immunity is moot. Once a contempt sentence has come to an end, no live case or controversy remains as to alleged errors in the contempt adjudication. *Securities and Exchange Commission v. Sloan,* 535 F.2d at 680. This rule applies whether the contempt is purged, *see id.,* or the sentence has expired. *See St. Pierre v. United States,* 319 U.S. 41, 42, 63 S.Ct. 910, 911, 81 L.Ed. 1199 (1943) (per curiam). This general proposition is of course subject to an exception where collateral legal consequences may still stem from the contempt order. *See United States v. Galante,* 298 F.2d 72, 73 (2d Cir.1962) (criminal contempt judgment). Such consequences are difficult to establish as to a civil contempt, however; even in the case of a criminal contempt the potential danger of moral stigma, in contrast to a possible loss of legal rights, is not sufficient to avoid mootness. *St. Pierre,* 319 U.S. at 43, 63 S.Ct. at 911. One court, indeed, has held that "an adjudication of civil contempt carries with it no possibility of collateral deprivations of civil rights or other specifically legal consequences." *Marshall v. Whittaker Corp.,* 610 F.2d 1141, 1145 (3d Cir.1979).

After we raised the mootness issue *sua sponte,* both parties argued that the appeal is not moot because the period that Johnson was incarcerated for contempt, unlike the period when he was incarcerated solely as a pre-trial detainee, will not be counted as time served toward any sentence imposed after conviction under 18 U.S.C. § 3585 (Supp. III 1985). Defendant's counsel also argues that the matter is not moot because the government may seek to introduce Johnson's contempt citation at trial.

Mootness is a jurisdictional issue, and the agreement of the parties does not bind us. *See Memphis Light, Gas & Water Division v. Craft,* 436 U.S. 1, 7–8, 98 S.Ct. 1554, 1559–60, 56 L.Ed.2d 30 (1978) (quoting *Sos-*

*na v. Iowa,* 419 U.S. 393, 398, 95 S.Ct. 553, 556, 42 L.Ed.2d 532 (1975)); *Seibert v. Sperry Rand Corp.,* 586 F.2d 949, 951 (2d Cir.1978). We must, therefore, address that issue.

The question of credit for time served and the possible evidentiary use of the contempt finding at trial may be live controversies, but neither is appealable at this stage of the proceedings. As our previous discussion indicated, the contempt order is appealable, if at all, only to the extent it denied the existence of any absolute immunity on Johnson's part from giving evidence. The time-served credit and evidentiary use of the contempt finding flow from that finding, but both may be raised on an appeal from a conviction. Neither can be the basis for an appeal at this time. Neither issue serves, therefore, to overcome the mootness arising from the facts that the government no longer seeks Johnson's testimony and that his present incarceration is no longer due to the contempt sentence.

This conclusion might be avoided if Johnson's situation fell within the recognized exception for cases that are "capable of repetition, yet evading review." *See Murphy v. Hunt,* 455 U.S. 478, 482, 102 S.Ct. 1181, 1183, 71 L.Ed.2d 353 (1982) (per curiam). The Supreme Court has held, however, that the application of this doctrine, absent a class action, is "limited to the situation where two elements combin[e]: (1) the challenged action [is] in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [is] a reasonable expectation that the *same* complaining party would be subjected to the same action again." *Id.* (Emphasis added) (quoting *Weinstein v. Bradford,* 423 U.S. 147, 149, 96 S.Ct. 347, 348, 46 L.Ed.2d 350 (1975) (per curiam)); *see also Jefferson v. Abrams,* 747 F.2d 94, 96–97 (2d Cir.1984).

The first element of this rule is satisfied in that Johnson could not litigate the validity of the order compelling his testimony prior to its expiration.

The second element, however, presents more serious difficulties. In *Murphy,* the

defendant had filed a civil rights complaint challenging the denial of pre-trial bail. By the time his appeal in that case had reached the Supreme Court, Hunt had been convicted of three offenses and would have had a new pre-trial bail claim only if all three of his convictions were overturned on appeal. Under these circumstances, the Court denied "that there exists a 'reasonable expectation' or 'demonstrated probability' that Hunt will ever again be in this position. There is no reason to expect that all three of Hunt's convictions will be overturned on appeal." *Murphy,* 455 U.S. at 483, 102 S.Ct. at 1184. Thus, the Court held Hunt's appeal moot.

In the present case, we consider the likelihood that the same controversy between Johnson and the government will reoccur to be equally remote. First, Johnson would have to be convicted, and his conviction overturned. Otherwise there would be no opportunity for Johnson to be called as a witness while he was also a defendant in the same criminal prosecution. Second, the conviction of one of Johnson's co-defendants would have to be overturned on the precise ground that the government had failed as a matter of law to prove that Johnson was a co-conspirator for purposes of admitting his declarations against the other defendants. Otherwise, the government would have no need for Johnson's testimony and could continue to rely on the earlier finding that he was a co-conspirator. Finally, the government would again have to prosecute both Johnson and a co-conspirator, and then call Johnson to testify at a pre-trial hearing. There is no " 'reasonable expectation' or 'demonstrated probability' " that these events will actually occur and thus no likelihood that "the same complaining party would be subjected to the same action again." *Murphy,* 455 U.S. at 482, 102 S.Ct. at 1183 (quoting *Weinstein v. Bradford,* 423 U.S. at 149, 96 S.Ct. at 348). We therefore conclude that the issues raised on this appeal are moot.

Appeal dismissed.