UNITED STATES of America, Plaintiff,

v.

**Sheldon WALKER, Defendant.**

No. 96 CR. 736(HB).

United States District Court, S.D. New York.

Nov. 3, 1997.

Patrick J. Smith, U.S. Atty., S.D.N.Y., New York City, for U.S.

Robert G. Morvillo, Morvillo, Abramowitz & Grand, New York City, for Sheldon Walker.

## OPINION AND ORDER

BAER, District Judge.

The government moves to compel the production of documents called for in a subpoena duces tecum dated October 13, 1997 and returnable October 22, 1997. Defendant asserts that (i) production of the documents would violate his Fifth Amendment privilege against self-incrimination; (ii) the documents sought are inadmissible and therefore not subject to a Rule 17 subpoena and (iii) the government's delay in seeking enforcement of the subpoena is unduly prejudicial. For the reasons discussed below, the motion to compel is GRANTED in part, on condition that the government grant the defendant use

immunity with respect to any act-of-production communication and DENIED · in part.

**BACKGROUND**

Defendant is an immigration attorney charged with submitting false asylum applications on behalf of his clients, sometimes without the client's knowledge. The government charges in the indictment that defendant charged his clients an initial fee of $300. Superseding Indictment at ¶ 16. It charges further that defendant collected the remainder of his fee when the client returned to defendant's office to pick up the approval notice mailed by the INS and that defendant ensured such a return visit by altering his clients' address information so that the notices could only be sent to his office. *Id.*

The government has submitted an affidavit stating that several of defendant's former employees have informed the government that defendant maintained fee payment records on client file jackets and that this was the primary method of recording such payments. Smith Aff. ¶ 7. The government has also submitted redacted excerpts of a report prepared by INS Special Agent Craig Vanderhoff supporting these contentions. *See* Smith Aff. Exh. C. The affidavit and report also state that the client files were kept at defendant's office, at 7 Penn Plaza in New York City.

The government initially sought production of this information by means of a grand jury subpoena that sought "all documents referring or relating to any and all fees paid" by approximately 1,350 identified asylum clients. In response, defendant produced the contents of his client files, but invoked his Fifth Amendment privilege with regard to some material, and noted that accordingly he had "not produced the jackets of Mr. Walker's client files" in response to the grand jury subpoena. *See* Letter from Robert G. Morvillo to Patrick Smith, June 10, 1996. The government subsequently sought and received the Court's permission to serve a Rule 17(c) subpoena, which seeks the production of "[a]ll documents referring or relating to fees paid by any person to Sheldon Walker . . . including but not limited to, file jackets from client files" as well as "all documents containing financial information" previously

withheld in response to the grand jury subpoena. That brings us somewhat belatedly, in my view, to this motion. Defendant again invoked his Fifth Amendment privilege and also objected to the subpoena on the ground that the requested documents are "not evidentiary or relevant to any issue at trial as they do not relate to any material allegation in the indictment." *See* Letter from Robert G. Morvillo to Patrick Smith, October 16, 1997.

**DISCUSSION**

**I. Fifth Amendment Privilege**

**A. Content of Documents**

■ The Supreme Court has held that "If the party asserting the Fifth Amendment privilege has voluntarily compiled the document, no compulsion is present and the contents of the document are not privileged." *United States v. Doe,* 465 U.S. 605, 612 n. 10, 104 S.Ct. 1237, 1242 n. 10, 79 L.Ed.2d 552 (1984) (emphasis added). This is because the act of communication inherent in transcribing an individual's thoughts (in this case, noting the payments made by defendant's clients) is made voluntarily, and not under compulsion. *See Fisher v. United States,* 425 U.S. 391, 409–410, 96 S.Ct. 1569, 1580–1581, 48 L.Ed.2d 39 (1976) ("the preparation of all the papers sought in these cases was wholly voluntary, and they cannot be said to contain compelled testimonial evidence"). Pursuant to Doe and Fisher, therefore, the notations on the file jackets, voluntarily made by defendant or his employees, are not privileged, nor does defendant contend they are.

**B. Act of Production Privilege**

■ Nevertheless, the Supreme Court has recognized that "the act of producing the document may be [privileged]." *Doe,* 465 U.S. at 612, 104 S.Ct. at 1242. This is so because "[a] government subpoena compels the holder of the document to perform an act that may have testimonial aspects and an incriminating effect." *Id.* The act of producing voluntarily prepared documents may constitute compelled testimonial communication in two circumstances: "(1) 'if the existence and location of the subpoenaed papers are unknown to the government'; or (2) where

production would 'implicitly authenticate' the documents." *In Re Grand Jury Subpoena Duces Tecum,* 1 F.3d 87, 93 (2d Cir.1993) ("*Doe II* ") (quoting *United States v. Fox,* 721 F.2d 32, 36 (2d Cir.1983)).

### 1. Existence and Location of Documents

■ With respect to the first circumstance, the act of production privilege is inapplicable "if the government can demonstrate with reasonable particularity that it knows of the existence and location of the subpoenaed documents." *Doe II* at 93 (quoting *In re Subpoena Duces Tecum,* 616 F.Supp. 1159, 1161 (E.D.N.Y.1985) (*Doe III* )).[1] In this case, although the government does not know with certainty that such files and information exist for each of the 1,300–plus clients of the defendant, it has established its knowledge of the existence of such files with "reasonable particularity". Specifically, the government has submitted evidence that defendant's employees and co-workers have told the government that client payment information was maintained on the file jackets. Other courts have found similar, albeit more particular, knowledge sufficient to negate any potential incrimination-by-production. *Fisher,* 425 U.S. at 411, 96 S.Ct. at 1581 (no privilege where "existence and location of papers are a foregone conclusion"); *Doe II,* 1 F.3d at 93 (government's knowledge regarding prior production of copy of calendar sufficient to negate any privilege in producing calendar); *United States v. Freidus,* 135 F.R.D. 52, 57 (S.D.N.Y.1991) (government knowledge sufficient where witness "testified in great detail to the existence of files related to" matters sought in subpoena); *Doe III,* 616 F.Supp. at 1161 (government's ex parte affidavit establishing government's knowledge that petitioner keeps a set of partnership books and two bank accounts sufficient, notwithstanding

"blunderbuss" nature of subpoena); *but see Doe,* 465 U.S. at 613, 104 S.Ct. at 1242 (privilege applies to subpoena seeking virtually all business records of sole proprietorship where nothing in record established government's knowledge that documents exist); *Fox,* 721 F.2d at 37–38 ("broad-sweeping" summons for all books and records of sole proprietorship infringes on privilege because government knowledge that some records exist is not sufficiently particular).

Defendant argues that the government's proffer regarding the existence and location of the documents is insufficient, because it only establishes that the documents existed at Penn Plaza as of the time of the interviews with Mr. Walker's former employees—over two years ago. Defendant relies on *United States v. Rue,* 819 F.2d 1488, 1493 (8th Cir. 1987), in which the court held that "[t]he relevant date on which existence and possession of the documents must be shown is the date on which the [government subpoena] is served." In this case, the subpoena was served in October 1997, more than two years after the information regarding the existence and location of the records was provided to the government. Furthermore, defendant asserts that he was evicted from his Penn Plaza office before January 1996.

The *Rue* court also noted that, "[w]hile not appropriate in all cases in some circumstances it may be permissible to invoke an 'inference of continued possession' in order to reach a conclusion of present possession from proof of previous possession." *Id.* The factors to be considered in determining whether such an inference should be drawn are (i) the nature of the documents, (ii) the nature of the business, (iii) any indication that the documents were transferred to someone else or destroyed, and (iv) the length of time between the date possession was shown and the

---

1. It is unclear whether *Doe II* intended to adopt a standard requiring less of a showing by the government regarding the extent of its knowledge than was required in prior cases. Without discussion, the *Doe II* court adopted the "reasonable particularity" test. In prior cases, the requirement was described as prior knowledge that "eliminated any possibility that ... production would constitute an incriminating testimonial act." *United States v. Fox,* 721 F.2d 32, 37–38 (2d Cir.1983); *see also Fisher,* 425 U.S. at 411,

96 S.Ct. at 1581 (finding no act of production privilege where "[t]he existence and location of the papers are a foregone conclusion and the taxpayer adds little or nothing to the sum total of the Government's information by conceding that he in fact has the papers."). Prior to *Doe II,* Judge Keenan described the government's task of demonstrating the extent of its prior knowledge in this Circuit as "formidable." *United States v. Marcos,* No. SSSS87 Cr. 598(JFK), 1989 WL 135256 (S.D.N.Y. Oct. 31, 1989) at * 5.

date of the subpoena. *Id.* In *Rue,* the court found an eight week delay "relatively short" and thus held that the IRS was entitled to the inference of continued possession. Here, the first two *Rue* factors favor application of the inference of continued possession. The documents sought contain payment information for defendant's clients. Such legal payment records are the type of documents that can reasonably be assumed to have been maintained by defendant over the course of the past two years. As to the third *Rue* factor, while there is evidence that the documents are no longer at defendant's former Penn Plaza office, there is no indication that the documents were transferred to *someone* else (i.e., out of defendant's possession, wherever he may keep them) or destroyed. Also significant is the fact that defense counsel did not object at oral argument when the government stated that it understood the file jackets to be in the possession of defense counsel. Finally, the fourth *Rue* factor works in defendant's favor, as the two years at issue here is significantly longer than the several months at issue in *Rue.* Having considered these factors, the Court concludes that application of the inference of continued possession is appropriate in this case, as it is reasonable to believe that the documents still exist and are in Mr. Walker's possession. Accordingly, the government has met its burden with respect to overcoming the act-of-production privilege as it relates to the existence and location of the file jackets.[2]

### 2. Implicit Authentication

■ Having overcome the first prong of the act-of-production privilege, the government must also overcome the second prong, which requires that production of the documents not be deemed an "implicit authentication" of them. *Doe II,* 1 F.3d at 93. "Implicit authentication occurs when an individual who receives a [subpoena] demanding production of documents complies with the [subpoena] and thereby implicitly testifies that he owns or at least possesses the documents." *Fox,* 721 F.2d at 38. Even when production could constitute authentication,

however (i.e., when "a government official will one day be able to testify that he knows the documents in question belong to petitioner because petitioner produced them when asked," *Doe III,* 616 F.Supp. at 1161), production can be compelled "when the government can authenticate the documents without relying on any act by petitioner." *Id.; see also Doe II,* 1 F.3d at 93 (authentication by other means negates claim of privilege). The government here contends that it can authenticate the file jackets through the testimony of defendant's former employees. Gov. Mem at 8. Such employees will be able to testify that the file jackets were kept in the regular course of defendant's business and that the notations thereon are typical of the notations made in the office when client payments were made. Defendant contends that the government's representation in this regard is insufficient to meet its burden, at least for now, since it has failed to identify who its potential witnesses are and exactly how they will authenticate the records. The question boils down to whether testimony by former employees would suffice to authenticate the file jackets as a business record. This Court believes that such testimony would suffice.

■ In order to ensure that the government's representation is true and that it will not rely on the act of production to authenticate the file jackets, production is conditioned on the government granting the defendant use immunity in the act of production. *See Marcos,* 1989 WL 135256 at *6 (government can grant use immunity limited to communicative aspects of production, which "would not cover the contents of the documents"); *Doe,* 465 U.S. at 616–17 & n. 17, 104 S.Ct. at 1244–45 & n. 17; 18 U.S.C. §§ 6002–03. While the Court would prefer a formal Section 6002–03 proffer of immunity, a written commitment (in the form of a letter to defense counsel) by the Assistant United States Attorney not to use any act-of-production communication against the defendant will suffice. The immunity grant shall encompass both any potential

---

**2.** To the extent that the subpoena seeks business records other than the file jackets, the motion to compel is DENIED because the government has

failed to establish any knowledge with respect to the existence or location of such records.

implicit authentication as well as any information derived from defendant's acknowledging the existence (or non-existence) of the files.

## II. Relevance

■ Defendant also objects to the subpoena on the grounds that the documents it seeks are not relevant or evidentiary because they do not relate to any material issue in the indictment. Pursuant to *United States v. Nixon*, 418 U.S. 683, 699–700, 94 S.Ct. 3090, 3103–3104, 41 L.Ed.2d 1039, documents sought by a Rule 17(c) subpoena must be "evidentiary and relevant." *See also United States v. Cherry*, 876 F.Supp. 547, 552 (S.D.N.Y.1995) ("Rule 17(c) may be used to obtain only evidentiary materials"). The government contends that the documents sought are relevant and admissible as evidence of defendant's pecuniary motive and to establish the method by which defendant carried out the alleged fraud. *See United States v. King*, 560 F.2d 122, 133 (2d Cir. 1977) (admissibility of evidence regarding profit motive is within judge's discretion); *United States v. Mennuti*, 679 F.2d 1032, 1037 (2d Cir.1982) (evidence regarding profit motive was properly admitted).

Defendant argues that any evidentiary value the file jackets may have with respect to motive or modus operandi is cumulative and outweighed by the burden of production. *See United States v. Kalter*, 5 F.3d 1166, 1169 (8th Cir.1993) (subpoena may be quashed where burden outweighs benefit). In support of this contention defendant cites *United States v. Washington*, 705 F.2d 489, 493 (D.C.Cir.1983), where the court affirmed the exclusion of evidence as to a defendant's innocent motive in a false statement case as irrelevant to the question of legal intent. *Washington* is inapposite as it merely stands for the proposition that lack of malice does not negate legal intent.

Defendant has failed to cite any cases indicating that the subpoenaed material is inadmissible or irrelevant. This is likely because the material is clearly relevant. The government contends that defendant engaged in a fraudulent scheme whereby he submitted false asylum applications and defrauded the applicants out of the fees they paid. The file jackets recording such payment are clearly relevant to defendant's pecuniary motive and financial gain, a critical element of the government's case. Likewise, the government contends that defendant changed the addresses on certain applications so that applicants would have to return to defendant's office, where they could be made to pay the remainder of their fee. Notations indicating multiple payments on file jackets of clients whose address was changed would certainly corroborate the government's contentions and be relevant. That the government may prove these points in other ways does not render the file jackets irrelevant or inadmissible. The subpoena seeks "evidentiary and relevant" material and is a proper Rule 17(c) subpoena.

## III. Prejudice and Delay

■ Defendant also argues that the government has prejudiced him by not seeking enforcement of the original grand jury subpoena and waiting until the eve of trial to issue (and litigate) the Rule 17(c) subpoena. Defendant's argument is based on the fact that a contempt order for failure to comply with a *grand jury* subpoena is appealable. *United States v. Ryan*, 402 U.S. 530, 532–33, 91 S.Ct. 1580, 1581–82, 29 L.Ed.2d 85 (1971) (order denying motion to quash not appealable; contempt order is appealable). By contrast, a contempt order for failure to comply with a Rule 17(c) *trial* subpoena is not appealable as a final order. "It is well established that a party to a proceeding may not appeal from an order of civil contempt except as part of an appeal from a final judgment." *United States v. Johnson*, 801 F.2d 597, 599 (2d Cir.1986). Rather, if a defendant "wishes to avoid the contempt sentence, he may testify with confidence that he will be able to attack the merits of the contempt order to the extent it affects a final judgment of conviction." *Id.* at 599. Defendant thus claims that the government's action in bringing the motion to compel after the Indictment was filed is prejudicial because it "foreclose[s][his] ability to obtain appellate review." Def. Mem. at 12.

While defendant would face a simpler choice had the government sought to enforce the grand jury subpoena, the court's holding in *Johnson* rests on the proposition that being forced to choose between a contempt sanction or delayed appellate review is acceptable. *Johnson's* holding that appellate review following conviction is sufficient undercuts defendant's contention that the government's inexplicably late enforcement motion "forecloses" appellate review—it merely delays such review until after trial. If anything, the government is prejudicing itself by risking reversal of any conviction on the ground that this Court is erroneously ordering the production of the documents. Moreover, the Court's requirement that the government immunize defendant's act of production further undercuts any contentions that defendant is prejudiced by the delay.

The *Johnson* court did recognize an exception to the no-appeal rule articulated therein, stating that where "[t]he essence of the claim is not that the testimony will incriminate [the defendant], an issue that can be determined on appeal after trial, but that he has an absolute immunity from giving testimony [or producing the documents], whether or not it incriminates him," *id.* at 600, an immediate appeal may lie. To the extent that defendant is claiming an absolute immunity from production of the documents—on the grounds that they are not properly the objects of a Rule 17(c) subpoena or that production is inherently incriminating in a manner that cannot be immunized—he would have the right to an immediate appeal under *Johnson.* This Court finds no merits in any such claims of immunity: the documents clearly come within the scope of a Rule 17(c) subpoena and any testimonial aspects to their production will be immunized pursuant to this Order. Defendant has a week in which to seek expedited review or mandamus from the Court of Appeals. To the extent defendant's claims are immediately appealable (and this Court holds that they are not), the appellate court will no doubt take appropriate action.

## CONCLUSION

The government's motion to compel is GRANTED with respect to the file jackets on condition that the government grant the defendant use immunity from any act-of-production communication. The motion is DENIED with respect to any other unidentified billing information. The government is to provide defendant with written assurances of immunity no later than noon tomorrow, November 4, 1997. Defendant must produce the documents promptly thereafter, or inform the Court and the government of his unwillingness to do so no later than Wednesday, November 5, 1997, in which case an order of contempt will be entered against defendant and/or his counsel.

**SO ORDERED.**