**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JAN 23 1998**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

NORMAN LAW, ANDREW GREER,
PETER HERRMANN, MICHAEL
JARVIS, JR., CHARLES M. RIEB,
DOUG SCHREIBER, LAZARO
COLLOZZO, ROBIN DREIZLER,
FRANK CRUZ, on behalf of themselves
and all others similarly situated,

      Plaintiffs-Appellees,

    v.

NATIONAL COLLEGIATE ATHLETIC
ASSOCIATION,

      Defendant-Appellant.

Nos. 96-3150
  &amp;  96-3186

NORMAN LAW, ANDREW GREER,
PETER HERRMANN, MICHAEL
JARVIS, JR., CHARLES M. RIEB,
individually and on behalf of all others
similarly situated,

      Plaintiffs-Appellees,

    v.

NATIONAL COLLEGIATE ATHLETIC
ASSOCIATION,

      Defendant-Appellant.

No. 96-3200

William C. Barnard (Donald C. Biggs, Gayle A. Reindl and Mary T. Doherty, also of Sommer & Barnard, Indianapolis, Indiana; John J. Kitchin and Linda J. Salfrank of Swanson, Midgley, Gangwere, Kitchin & McLarney, Kansas City, Missouri, with him on the briefs) for Defendant-Appellant.

W. Dennis Cross (Lori R. Schultz, also of Morrison & Hecker, Kansas City, Missouri; Robert G. Wilson of Cotkin & Collins, Los Angeles, California; and Gerald I. Roth, Allentown, Pennsylvania, with him on the briefs) for Plaintiffs-Appellees.

Before EBEL, LOGAN, and KELLY, Circuit Judges.

LOGAN, Circuit Judge.

Defendant National Collegiate Athletic Association (NCAA) has filed interlocutory appeals of the district court's orders imposing interim attorneys' fees (Nos. 96-3150 and 96-3186) and sanctions (No. 96-3200) in this antitrust action.

Plaintiffs are "restricted earnings" college sports coaches who alleged that an NCAA rule limiting their compensation violated Section 1 of the Sherman Anti-trust Act, 15 U.S.C. §§ 1-7. The district court granted summary judgment for plaintiffs on liability, leaving significant issues related to damages for later determination. When the court believed the NCAA was about to act contrary to the summary judgment order, it permanently enjoined the NCAA from enforcing its compensation limits. The NCAA

appealed the permanent injunction which we affirm today in a separate opinion.  See Law

v. NCAA, __ F.3d __, No. 96-3034 (10th Cir. Jan. 23, 1998).

**I**

**Nos. 96-3150 and 96-3186**

After determining that plaintiffs were entitled to interim attorneys' fees as

substantially prevailing parties, in an order entered April 18, 1996, the district court

ordered the NCAA to pay by April 29 the sum of $380,682.82 in attorneys' fees plus

expenses.  That order directed the parties to consult to determine the fees due to another

of plaintiffs' law firms and ordered the NCAA to pay those fees also by April 29.  Instead

of paying, the NCAA filed an appeal on April 29 (No. 96-3150).  In a May 3 hearing the

district court set the amount and ordered payment of those attorneys' fees it had not

determined in its April 18 order.  The NCAA appealed that decision on May 20 (No. 96-

3186).  We hold that under the particular circumstances of this case we have discretion to

hear the appeals of the interim attorneys' fees awards.  We exercise that discretion to

accept the appeals and affirm the awards.

An award of interim attorneys' fees is not a final order and thus generally is not

appealable.  See, e.g., Lac Courte Oreilles Band of Lake Superior Chippewa Indians v.

Wisconsin, 829 F.2d 601, 602 (7th Cir. 1987); Hastings v. Maine-Endwell Cent. Sch.

Dist., 676 F.2d 893, 895-96 (2d Cir. 1982); Ruiz v. Estelle, 609 F.2d 118, 119-20 (5th

Cir. 1980).  Under the collateral order doctrine, however, such orders may be appealed if

3

a party is ordered to pay fees immediately and there is a likelihood that party will not be able to recover those fees if the case is reversed on appeal. See, e.g., Palmer v. City of Chicago, 806 F.2d 1316, 1320 (7th Cir. 1986). The NCAA concedes that the interim fee awards here do not meet the requirements of the collateral order doctrine. Instead, it argues that we have pendent appellate jurisdiction to review the awards because the NCAA has filed a valid appeal of the court's permanent injunction order. See Snell v. Tunnel, 920 F.2d 673, 676 (10th Cir. 1990) (holding that we had pendent appellate jurisdiction over an otherwise nonappealable district court decision that was closely related to an appealable decision).

A recent decision of the Supreme Court, Swint v. Chambers County Comm'n, 514 U.S. 35 (1995), held that interlocutory appeals should be limited to those expressly provided for by Congress, including (1) under 28 U.S.C. § 1292(b) when a district court certifies an issue for immediate appeal; and (2) pursuant to rules created by the Supreme Court according to its authority from the Rules Enabling Act. Id. at 45-48. The Court expressed a concern that even if there were practical considerations of judicial economy supporting appellate jurisdiction "a rule loosely allowing pendent appellate jurisdiction would encourage parties to parlay . . . collateral orders into multi-issue interlocutory appeal tickets." Id. at 49-50. The Court, however, left open the possibility of pendent appellate jurisdiction if an otherwise nonappealable decision is "inextricably intertwined"

4

with the appealable decision, or if review of the nonappealable decision is "necessary to insure meaningful review" of the appealable one. Id. at 51.

In Moore v. City of Wynnewood, 57 F.3d 924 (10th Cir. 1995), we addressed the extent to which Swint narrowed pendent appellate jurisdiction. The plaintiff in Moore sued a city and its police chief under § 1983 alleging that plaintiff was demoted for statements he made during a public meeting, in violation of his First Amendment rights. Both defendants appealed the district court's denial of their summary judgment motion in which they asserted that there was no First Amendment violation and that the chief was entitled to qualified immunity. We had jurisdiction, under Mitchell v. Forsyth, 472 U.S. 511 (1985), to review the chief's appeal of the summary judgment order denying him qualified immunity. Addressing that appeal, we held the chief was entitled to qualified immunity because the plaintiff failed to show a violation of his First Amendment rights. The city, of course, was not entitled to qualified immunity. See Owen v. City of Independence, 445 U.S. 622 (1980). Hence we could consider its appeal only if authorized under pendent appellate jurisdiction as "inextricably intertwined" with the other appeal.

Addressing whether we could or should exercise jurisdiction over the city's interlocutory appeal, we recognized first that whether to exercise pendent appellate jurisdiction is a matter for the discretion of the appellate court. Moore, 57 F.3d at 929; see also In re: Tutu Wells Contamination Litigation, 120 F.3d 368, 382 (3d Cir. 1997)

5

("The doctrine of pendent appellate jurisdiction, in its broadest formulation, allows an appellate court in its discretion to exercise jurisdiction over issues that are not independently appealable but that are intertwined with issues over which the appellate court properly and independently exercises its jurisdiction."). In Moore we concluded that "a pendent appellate claim can be regarded as inextricably intertwined with a properly reviewable claim on collateral appeal only if the pendent claim is coterminous with, or subsumed in, the claim before the court on interlocutory appeal--that is, when the appellate resolution of the collateral appeal necessarily resolves the pendent claim as well." 57 F.3d at 930. We then reasoned that the city's appeal was "inextricably intertwined" with the individual defendant's appeal because our holding that plaintiff did not establish a First Amendment violation by the police chief disposed of plaintiff's First Amendment claims against the city. Hence, we accepted jurisdiction and ruled in favor of the city.

In the instant case the only issue in the NCAA's appeal of the permanent injunction (No. 96-3034) was the correctness of the district court's summary judgment order finding the NCAA liable for a violation of the antitrust laws.[1] We, of course, have now upheld the district court's determination on that issue. Our resolution of that issue

---

[1] The district court made it clear that it awarded the fees based on the summary judgment on the question of liability and not the permanent injunction order, see Appellant's App. 207, but that does not settle the question. In disposing of the permanent injunction appeal this panel essentially reviewed the summary judgment.

also determines the merits of the appeals of the awards of interim attorneys' fees, because the only issue the NCAA raises in those appeals is whether plaintiff was a prevailing party.[2] Plaintiffs were certainly the prevailing parties in the district court, based on the court's summary judgment determination in their favor; but the NCAA hoped to prevail on appeal and was resisting payment of the fees on that ground alone. Thus, as we held in Moore the two appeals are inextricably intertwined.[3]

There are other issues that might have been raised in an appeal of interim attorneys' fees. Had the amount been contested or other issues raised this would have constituted one of those parlays "into multi-issue interlocutory appeal tickets" condemned in Swint. See 514 U.S. at 49-50. In the instant case, however, the NCAA did not contest the reasonableness of the fees or raise any other issue that would prohibit our taking

---

[2] See City of Chanute, Kansas v. Williams Natural Gas Co., 31 F.3d 1041, 1047 (10th Cir. 1994) (defining prevailing party as (1) one gaining some relief on the merits of their claim or (2) one acting as significant catalyst causing defendant to change position if that change was required by law). A "party which achieves the objective of its suit by means of an injunction issued by the district court is a prevailing party in that court." Dahlem v. Board of Educ. of Denver Pub. Schs., 901 F.2d 1508, 1512 (10th Cir. 1990) (footnote omitted).

[3] The NCAA points out that a motions panel of this court in granting the motion for approval of a supersedeas bond and a stay of the sanctions regarding the attorneys' fees appeal stated that "[t]he interim attorney's fee award is inextricably intertwined with the appeal from the permanent injunction in this case." Appellant's App. 371. The NCAA asserts that this statement resolves the issue as law of the case. A decision of a motions panel, however, is not binding on the merits panel. See Stifel, Nicolaus & Co. v. Woolsey & Co., 81 F.3d 1540, 1543-44 (10th Cir. 1996) (appeals court reviews prior motions panel decision "uninhibited by the law of the case doctrine"). We thus do not consider the statement by the motions panel to control our decision on this issue.

jurisdiction. Therefore, we exercise our discretion to accept the appeals. Because we have affirmed the district court's determination that the restricted earnings coach policy the NCAA imposed on its member institutions violates the antitrust laws and because the parties agree that a prevailing plaintiff in an antitrust action is entitled to reasonable attorneys' fees under Section 16 of the Clayton Act, 15 U.S.C. § 16, we AFFIRM the interim attorneys' fee awards.

## II

### No. 96-3200

The NCAA also appeals the sanctions imposed by the district court for its failure to pay the interim attorneys' fees by the April 29, 1996 date the court ordered. We hold that we have jurisdiction over the appeal of the sanctions. We find the daily fines imposed on the NCAA for the period before the court's May 3 hearing to be criminal contempt, imposed without following essential procedures; therefore, we reverse and set aside those amounts. We find the remaining sanctions to be civil contempt and within the district court's authority to impose, and therefore we affirm them.

The first district court order awarding interim attorneys' fees was entered April 18, 1996, and directed the NCAA to pay them by April 29. Instead of paying, on April 29 the NCAA filed a notice of appeal to this court and a motion with the district court for a stay and for approval of a supersedeas bond. Believing--correctly as we hold--that the NCAA had no absolute right to appeal the interlocutory order, the district court refused the stay

8

and refused to set bond. When the NCAA still did not pay, on May 1 plaintiffs filed a motion for sanctions against the NCAA. The district court held a hearing on May 3, set and ordered payment of additional attorneys' fees, and reaffirmed its prior oral denial of the stay and bond motion. It imposed daily sanctions of $5,000 on the NCAA, payable to plaintiffs, retroactive to April 30, increasing to $10,000 daily if not paid in full by May 9. On May 7, this court granted the NCAA's motion for a supersedeas bond and stayed the sanctions order.

As a general rule, an order imposing sanctions is not immediately appealable. See G.J.B. & Assocs., Inc. v. Singleton, 913 F.2d 824, 827-29 (10th Cir. 1990) (counsel may not file an interlocutory appeal from the imposition of sanctions); D&H Marketers, Inc. v. Freedom Oil & Gas, Inc., 744 F.2d 1443, 1446 (10th Cir. 1984) (parties may not file an interlocutory appeal from the imposition of sanctions). The NCAA argues, however, that the order constitutes an order of criminal contempt and therefore is immediately appealable. See Consumers Gas & Oil, Inc. v. Farmland Indus., Inc., 84 F.3d 367, 370 (10th Cir. 1996) ("an adjudication of criminal contempt is a final order appealable prior to final judgment") (quoting Pro-Choice NetWork of Western New York v. Walker, 994 F.2d 989, 994 (2d Cir. 1993)). Our jurisdiction thus depends on whether the district court's order constituted civil or criminal contempt. The analysis we applied in the companion case decided today, Law v. NCAA, __ F.3d __, No. 96-3340 (10th Cir. Jan. 23, 1998), resolves this issue.

9

The district court's sanction order imposed a daily fine. A fine is a civil sanction only if it is compensatory or coercive. See id. slip op. at 11. Here the $5,000 (or $10,000) daily fine is not compensatory, even though ordered paid to plaintiffs. In the instant case, the NCAA was not given the opportunity to purge the fines imposed for the period April 30 through May 3. We reject plaintiffs' argument--in which it relied on Pro-Choice NetWork--that the district court forewarned the NCAA it might be sanctioned, and thus the fine ultimately imposed was coercive and civil. In Pro-Choice NetWork, the defendants were held in contempt of court for violating a restraining order that specifically provided the defendants would be held in contempt and fined a fixed amount if they violated the order; the Second Circuit held the fines were civil because they had been imposed prospectively. See 994 F.2d at 995. The instant case is distinguishable; the court only mentioned the possibility of sanctions and did not set any amount until after the NCAA's act. See, e.g., Lamar Fin. Corp. v. Adams, 918 F.2d 564 (5th Cir. 1990) (defendants refused to comply with court order to produce documents; court found them in contempt and fined them retroactive to date they refused production and prospectively until they produced the documents; appeals court held that the retroactive portion was criminal). Thus, we hold that insofar as the fines applied to the period April 30 through May 3 the fines were not coercive, and hence they were criminal.

As to the daily fines from May 4 until our stay order of May 7, the NCAA had the opportunity to avoid the sanctions by paying the attorneys' fee awards; thus this portion

10

was coercive and civil. Although a contempt order or judgment is characterized as either civil or criminal depending upon its primary purpose, Hicks v. Feiock, 485 U.S. 624, 638 n.10 (1988), when, as here, a contempt order contains both a punitive and a coercive dimension, for purposes of appellate review it will be characterized as a criminal contempt order. Lamar Fin. Corp., 918 F.2d at 566. As such, it is appealable as a final judgment under 28 U.S.C. § 1291. We thus have appellate jurisdiction to review the entire sanction order. See FDIC v. LeGrand, 43 F.3d 163, 170 (5th Cir. 1995); Spindelfabrik Suessen-Schurr v. Schubert & Salzer, 903 F.2d 1568, 1578-79 (Fed. Cir. 1990).

"Criminal contempt is a crime in the ordinary sense, and criminal penalties may not be imposed on someone who has not been afforded the protections that the Constitution requires of such criminal proceedings." International Union, United Mine Workers of America v. Bagwell, 512 U.S. 821, 826-27 (1994) (citations and quotations omitted). The degree of procedural safeguards required for criminal contempt proceedings varies based on the seriousness of the penalty, see id., but notice is a basic requirement for any criminal contempt proceeding. The court failed to give notice that the proceedings on May 3 would be of a criminal nature, as required by Fed. R. Crim. P. 42(b) which provides that "[a] criminal contempt . . . shall be prosecuted on notice. . . . [which] shall state the essential facts constituting the criminal contempt charged and describe it as such." Fed. R. Crim. P. 42(b). Although the district court had informed

11

counsel orally on April 29 that it would "favorably entertain a motion for sanctions" if the NCAA failed to comply, see Appellant's App. 233, that notice was not explicit, see FTC v. Gladstone, 450 F.2d 913, 916 (5th Cir. 1971); it did not communicate to the NCAA that the hearing was a criminal proceeding. See LeGrand, 43 F.3d at 169 (notice of hearing must "specifically state that the hearing will be a criminal contempt proceeding," unless "the offending conduct . . . [is] such that it can only be punished by punitive or criminal sanctions"); Young v. United States ex rel. Vuitton et Fils S.A., 481 U.S. 787, 798-99 (1987). Because the procedures required of criminal contempt proceedings were not followed here, we REVERSE the sanctions imposed for the period of April 30 through May 3.

The NCAA asserts that the prospective coercive sanction imposed for the period after May 3 was erroneous. The NCAA's argument is based on its belief that it had a right to appeal and hence a right to a stay if it was able to file a sufficient supersedeas bond. It argues that Fed. R. Civ. P. 62(d) provides district courts with only a ministerial duty in approving bonds.

The NCAA's argument fails primarily because it had no right to appeal the interim attorneys' fee awards. It could ask this appellate court to take its appeal. But whether we would do so depended upon both an exercise of our discretion and a determination that our decision on the related injunction appeal necessarily resolved the appeal the NCAA

12

sought to take. When there is no appeal of right there is no duty on the district court to grant a stay upon the filing of a supersedeas bond.

The NCAA can find no solace in Fed. R. Civ. P. 62. As applied to the injunction order that was appealable of right, Rule 62(c) gives discretion to the district court whether to issue a stay during the pendency of the appeal. If discretion is given to the district court when the order is appealable of right, it would be incongruous to read Rule 62(d) to require a stay upon presentation of a supersedeas bond when the appeal must piggy-back on the injunction appeal, and depends on an exercise of discretion by the appellate court.

The NCAA's proper course of action, if it sought to avoid or delay paying the interim fee awards, would be to follow the dictates of Fed. R. App. P. 8. It first should have sought a stay in the district court before April 29, and when the district court refused, then applied, as it did belatedly, in this court. The application to this court required us to make a preliminary decision whether we would consider the appeal sufficiently intertwined with the appeal of the injunction to grant the appeal.

In the instant circumstances, if we were to set aside the civil sanctions--when we have affirmed the district court's holding on the antitrust liability of the NCAA and the interim attorneys' fee awards--we would undermine the district court's authority to apply coercive sanctions to enforce its proper orders.

We REVERSE the district court's daily fine sanctions insofar as they apply to the period April 30 through May 3. We AFFIRM the daily fine sanctions as they apply to the

period May 4 through May 6, before this court's stay order. In view of our determination herein we RESCIND our stay of the daily sanctions the district court ordered, effective twenty-four hours after this court's mandate issues with respect to the instant appeal.